SZOTAK, Appellant,

v.

MORAINE COUNTRY CLUB, INC., Appellee.

[Cite as *Szotak v. Moraine Country Club, Inc.*, 172 Ohio App.3d 34, 2007-Ohio-2974.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21618.

Decided June 8, 2007.

Richard S. Skelton, for appellant.

George J. Zamary and Dale A. Stalf, for appellee.

DONOVAN, Judge.

{¶ 1} Plaintiff-appellant, Mihly Szotak, appeals from a decision of the Montgomery County Court of Common Pleas, which sustained the motion for summary judgment of defendant-appellee, Moraine Country Club ("MCC"), on April 17, 2006. Szotak filed a timely notice of appeal with this court on May 15, 2006.

I

{¶ 2} Szotak speaks English, but his native language is Hungarian. He has lived in the United States since 1957 and has done various painting jobs for MCC beginning in the 1970s. Szotak's status as an independent contractor for MCC is not in dispute.

{¶ 3} On March 25, 2003, Szotak was working as an independent contractor at MCC's business premises. He had been hired that day to prime and paint vertical canopy supports at MCC's premises. On the various painting jobs, including the job of March 25, 2003, MCC provided Szotak with a ladder, brushes, scrapers, drop cloths, paint, and other necessary supplies. Thomas Long, the maintenance supervisor at MCC, discussed with Szotak a list of additional supplies that would be necessary to complete the particular job that day. After

their discussion, Long left the premises in order to purchase the requested supplies.

{¶ 4} Once Long had gone, Szotak began the scheduled repairs on the vertical canopy supports. Szotak used an extension ladder so that he could work on the center support post to do some touch-up scraping and painting. Resting the bottom of the ladder on the patio floor, he extended it against the building and locked the latches. Szotak fell while working on the ladder and was severely injured.

{¶ 5} Szotak filed a complaint against MCC sounding in negligence on March 24, 2005. MCC filed its motion for summary judgment on February 24, 2006. On March 27, 2006, Szotak filed his response to the motion. MCC filed a reply brief on April 3, 2006. As previously stated, the trial court sustained MCC's motion for summary judgment on April 17, 2006. It is from this judgment that Szotak now appeals.

## II

{¶ 6} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.

## III

{¶ 8} Szotak's first assignment of error is as follows:

{¶ 9} "The trial court erred in finding that there was not a material issue of fact as to whether Moraine Country Club owed a duty of care to plaintiff Szotak because Moraine Country Club actively participated in plaintiff's work."

{¶ 10} In his first assignment, Szotak contends that the trial court erred when it held that no genuine issue of material existed regarding whether MCC, through its employee, Long, actively participated in the specific painting project in which Szotak fell and was injured. In support of this argument, Szotak asserts that MCC controlled and directed the work that he was to perform on the day of the accident. Szotak points out that MCC's maintenance supervisor, Long, has a history of participation in the work he had been hired to perform in the past. In light of these facts, Szotak concludes that MCC owed a duty of ordinary care to him. He also provides the deposition testimony of a safety expert that, according to Szotak, demonstrates that MCC's actions on the day of the accident fell below that standard of care.

{¶ 11} To establish actionable negligence, it is fundamental that a plaintiff demonstrate (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately caused by the breach of duty. Where there is no duty or obligation of care or caution, there can be no actionable negligence. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand,* 45 Ohio St.3d at 318, 544 N.E.2d 265.

{¶ 12} In *Kratzer v. Gen. Motors Corp.* (Feb. 27, 1998), Montgomery App. Nos. 16590, 16593, and 16594, 1998 WL 184640, we discussed the duty of care owed to an independent contractor if the hazards attendant to the work are inherently present because of the nature of the work performed:

{¶ 13} "Under the common law of negligence, '[w]here an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.' *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus. 'One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance.' *Id.,* at paragraph two of the syllabus.

{¶ 14} "R.C. 4101.11 requires every employer to furnish a place of employment that is safe for its employees and frequenters of the place of

employment. However, '[t]he duty to frequenters of places of employment, set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor.' *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165, syllabus. Instead, the primary responsibility for protecting such an employee lies with his employer. *Id.*, at 250, 512 N.E.2d 1165.

{¶ 15} "There is, however, an exception to the rule of nonliability established by *Wellman* and *Eicher*. 'One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.' *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus. Nevertheless, 'a general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work.' *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110[, 21 OBR 416], 488 N.E.2d 189, syllabus.

{¶ 16} " 'For purposes of establishing liability to the injured employee of an independent subcontractor, "actively participated" means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project.' *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 650 N.E.2d 416, syllabus."

{¶ 17} In sustaining MCC's motion, the trial court stated that "summary judgment is appropriate on the 'actively participated' sub-issue and the two prongs therein, to wit, directing the activity and/or giving or denying permission for the critical acts." After thoroughly reviewing the record in this case, we conclude that the trial court was correct in sustaining MCC's motion for summary judgment. MCC's maintenance supervisor, Long, did not actively participate in the specific job that Szotak was hired to perform on March 25, 2003. Although Long admitted that he had on previous unrelated occasions physically painted along with Szotak, the evidence clearly demonstrates that Long was not physically painting or otherwise present when Szotak fell and was injured.

{¶ 18} Moreover, Szotak's contention that a portion of Long's deposition testimony demonstrates that Long "directed" him in doing the March 25, 2003 painting job is a clear mischaracterization of the evidence. Szotak's counsel merely used the word "direction" as part of a question to Long:

{¶ 19} "Q: And as far as the specifics of what he was to do, he had your permission and direction to do that?

{¶ 20} "A: That's correct."

{¶ 21} We agree with the trial court that the cited testimony only confirms that Szotak had permission to perform the specific job he was hired for and that Long provided him with general directions on how to complete the painting job. Clearly, this constitutes general supervisory conduct over the entire project that does not rise to the level of directing the specific activity that resulted in Szotak's fall. Long did not instruct Szotak with respect to the placement of the ladder from which he fell. That decision was solely Szotak's. After Long provided Szotak with permission and a general overview of what the painting job entailed, he left MCC to shop for supplies at the store. Szotak independently began the project in his absence, which included specifically placing the ladder and then climbing that ladder. Long's role on this particular painting project was that of a general supervisor and not an active participant. His actions do not implicate MCC in any way regarding Szotak's fall. Thus, the responsibility for his fall and subsequent injury rests squarely on Szotak's shoulders, and the trial court did not err in sustaining MCC's motion for summary judgment on Szotak's claim in this regard.

{¶ 22} Szotak's first assignment of error is overruled.

## IV

{¶ 23} "The trial court erred in failing to find a material issue of fact as to whether or not Moraine Country Club failed to comply with the occupational safety requirements promulgated under OSHA, 29 U.S.C. 654."

{¶ 24} In his second assignment of error, Szotak contends that 29 U.S.C. 654 imposes a duty on employers to comply with Occupational Safety and Health Standards ("OSHA") promulgated under that chapter. Szotak further argues that MCC committed violations of certain OSHA regulations. We disagree.

{¶ 25} Szotak advanced the identical argument (and the identical evidence) before the trial court in his attempt to defeat MCC's motion for summary judgment. In support of his argument, Szotak highlights the text of certain OSHA regulations as well as the testimony of his safety expert. Szotak also proffers the holding in the Eleventh District's decision in *Hernandez v. Martin Chevrolet, Inc.* (Sept. 30, 1993), Trumbull County App. No. 92–T–4739, 1993 WL 407283, which essentially held that a violation of OSHA constitutes negligence per se on the part of an employer. That case, however, has been definitively overruled by the Supreme Court of Ohio. Although the trial court made him aware that his argument in this regard had no merit whatsoever, Szotak, for

some unknown reason, has attempted in this appeal to duplicate it in this assignment of error. His argument still lacks merit.

{¶ 26} In *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 649 N.E.2d 1215, the Supreme Court held that pursuant to the language used in enacting 29 U.S.C. 654, Congress did not intend OSHA to affect the duties of employers owed to those injured during the course of their employment. The court further held that a violation of OSHA does not constitute negligence per se, thereby expressly overruling the Eleventh District.

{¶ 27} Thus, the trial court was correct when it held that Szotak's reliance on alleged OSHA violations is without merit because Ohio law does not recognize such violations as constituting negligence per se. Moreover, in light of the trial court's reliance upon a Supreme Court case that expressly overruled Szotak's only legal authority to support this assignment, we find appellant's repetition of this argument both unnecessary and clearly frivolous. Appellant should be mindful of App.R. 23 in advancing such a flawed position. The rule states:

{¶ 28} "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."

{¶ 29} Szotak's second assignment of error is overruled.

V

{¶ 30} "The trial court erred in failing to find that there was a material issue of facts [sic] as to whether the duty of frequenters applies to the plaintiff because the nature of the cause of the injury was not inherently dangerous."

{¶ 31} In his final assignment of error, Szotak contends that the evidence adduced during discovery demonstrated two different causes of the accident. First, numerous witnesses, including Szotak, testified that the ladder simply slipped. Although Szotak acknowledges that the ladder did slip, he claims that it did so because it was resting on a piece of metal that came loose and caused the ladder to slip. Szotak asserts that this second scenario with regard to the loose piece of metal was not inherently dangerous and thus required MCC to extend a duty of care to Szotak.

{¶ 32} During his deposition, Szotak testified as follows:

{¶ 33} "Q: And my question to you is, aside from what Tom Long may have said to you, what do you believe the country club [MCC] did wrong?

{¶ 34} "A: It is only thing, that piece of iron would turn loose, otherwise, I wouldn't fall. Because I put my ladder over there not too straight, just a slope,

you know, make sure. That's the main thing to—because my life is in jeopardy if I don't do this right."

{¶ 35} From the above testimony, it is clear that Szotak was aware that he was performing inherently dangerous work. Moreover, as we pointed out in the analysis of the first assignment of error, Szotak was an independent contractor who was solely responsible for placement of the ladder. MCC, through its representative Long, had only a general supervisory role in regards to Szotak's duties that day. MCC had no input or involvement as to how Szotak completed the job. Thus, Szotak must bear the consequences of his failure to place the ladder in a suitable location in order to successfully complete what is clearly an inherently dangerous job. Therefore, the trial court did not err when it sustained MCC's motion for summary judgment.

{¶ 36} Szotak's third assignment of error is overruled.

VI

{¶ 37} All of his assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN, J., concurs.

GRADY, J., dissents.

GRADY, J., dissenting.

{¶ 38} I respectfully dissent from the decision of the majority.

{¶ 39} In *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165, an employee of an independent contractor who was assigned to work on the premises of the defendant's steel foundry suffered a heart attack after inhaling noxious fumes produced by the defendant's industrial processes. He commenced an action against the steel company on a claim for his injuries, alleging a breach of the duty of care to protect a frequenter from hazardous conditions that R.C. 4101.11 imposes. The trial court granted a directed verdict for the defendant at the conclusion of the plaintiff's case. On appeal, the court of appeals affirmed. Upon its review, the Supreme Court likewise affirmed, for two reasons.

{¶ 40} First, the evidence failed to demonstrate that the plaintiff's injuries resulted from a hazardous work condition, because there was no evidence that he was actually exposed to the noxious fumes and/or that the chemical composition of those fumes caused his heart attack.

{¶ 41} Second, though R.C. 4101.11 imposed a duty on the defendant steel company to protect the plaintiff from hazardous conditions on its premises, that duty did not require the company to protect the plaintiff from hazards that are inherently and necessarily present because of the nature of the work performed, absent the company's actual participation in the plaintiff's work. Therefore, contrary to the plaintiff's contention, the steel company had no duty to provide the plaintiff with a face mask that could have prevented his inhalation of the noxious fumes, a protective device the company provided its own employees.

{¶ 42} In the present case, the cause of plaintiff-appellant's injuries is not in dispute. He broke his nose, back, and both arms when the extension ladder on which he was standing slid backward from where it was positioned, causing him to fall with it to the ground. The only issue is whether defendant-appellee, Moraine Country Club, breached a duty of care that it owed plaintiff and thereby proximately caused in his injuries.

{¶ 43} Until the law of gravity is repealed, standing above ground level on a ladder presents an inherent risk of injury resulting from a fall. In the present case, the plaintiff did not fall off the ladder, but fell with the ladder to the ground when the ladder slipped away. Further, unlike the defendant in *Eicher,* in which a failure to act was involved, the defendant here acted to supply plaintiff with the instrumentality of his injury, the extension ladder, which he was expected to use in performing the work that the defendant country club directed him to perform. Also, there is evidence that had plaintiff been supplied with a stepladder instead, the accident would not have occurred.

{¶ 44} In construing the duty of care to frequenters that R.C. 4101.01 imposes, the Supreme Court has held:

{¶ 45} "One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus by the court.

{¶ 46} Here, the personal injury was suffered by the independent contractor, an individual, but the same rule applies. The country club engaged plaintiff's services, and by providing him the extension ladder to use in the work it directed plaintiff to perform, the defendant actually participated in the job operation from which plaintiff's injuries arose. Further, by not providing plaintiff with a stepladder instead, the country club failed to eliminate a hazard that the extension ladder presented, which, in the exercise of ordinary care, could have been avoided. Therefore, the country club may be liable for its breach of the duty of care to plaintiff that R.C. 4101.01 imposes.

{¶ 47} The foregoing analysis is, in my view, compelled by Civ.R. 56, which requires us to construe the evidence most strongly in favor of the plaintiff. Whether plaintiff was also negligent and, if so, whether his negligence also proximately caused plaintiff's injuries presents an issue of comparative negligences for a jury to resolve. I would reverse and remand.