[Cite as *Baker v. Coast to Coast Manpower, L.L.C.*, 2012-Ohio-2840.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY

JAMEY D. BAKER, ET AL,

    PLAINTIFFS-APPELLANTS,           CASE NO. 5-11-36

    v.

COAST TO COAST MANPOWER,
LLC, ET AL,                       O P I N I O N

    DEFENDANTS-APPELLEES.


Appeal from Hancock County Common Pleas Court
Trial Court No. 2009-CV-936

Judgment Affirmed

Date of Decision: June 25, 2012


APPEARANCES:

    *Jonathan M. Ashton and Kevin J. Boissoneault* for Appellants

    *Todd A. Gray and Brendan M. Richard* for Appellees

**ROGERS, J.**

{¶1} Plaintiffs-Appellants, Jamey Baker ("Baker") and Corinna Baker (collectively "the Bakers" or "Plaintiffs"), appeal the judgment of the Court of Common Pleas of Hancock County, granting summary judgment in favor of Defendant-Appellee, Best Buy Stores, L.P. ("Best Buy"). On appeal, the Bakers challenge the trial court's finding that Best Buy did not owe a duty of care to Baker and the trial court's procedural rulings with respect to Best Buy's supplementary motion for summary judgment. Finding that the motion for summary judgment was properly granted in favor of Best Buy, we affirm the judgment of the trial court.

{¶2} On November 3, 2007, Baker was injured at a Best Buy distribution center in Findlay, Ohio ("distribution center" or "yard") while he was cutting a seal on a tractor trailer. At the time, Baker was an employee/truck driver of Coast to Coast Manpower, LLC ("Coast to Coast"), a trucking company. Coast to Coast was hired by Best Buy as an independent contractor to perform yard operations as well as transport shipments to Best Buy locations. At the distribution center, Coast to Coast was responsible for moving trailers where needed for loading and unloading shipments and unsealing the trailers. Baker's duties at the yard included driving the tractors as needed for loading and unloading the trailers and breaking the seals on the trailers. While breaking one of the cable seals on

November 3, 2007, a piece of the cable struck Baker in his right eye, causing him to sustain injuries.

{¶3} On November 9, 2009, Plaintiffs filed a complaint against, inter alia, Best Buy seeking damages as a result of the defendants' intentional and negligent actions and for breach of duty.[1] On December 13, 2010, Best Buy filed a motion for summary judgment, arguing that there was no genuine issue of material fact regarding Best Buy's lack of duty to Plaintiffs. Plaintiffs filed their motion and memorandum in opposition on January 21, 2011, arguing that Best Buy owed a duty of care to Baker pursuant to the frequenter statute and in light of Best Buy's control of the distribution center and provision of equipment used to cut the wire seals. On January 28, 2011, Best Buy filed a reply arguing that it did not owe Plaintiffs a duty as it had no control over the actions of its independent contractor, did not actively participate in Baker's activity, and that Plaintiffs' claims were barred by the assumption of risk doctrine.

{¶4} On June 13, 2011, Best Buy filed a supplement to its motion for summary judgment ("Supplemental Motion"), submitting new evidence that a site inspection of the distribution center had revealed that the cutting implements had warning labels on them, notifying users of the necessity of wearing safety glasses. Best Buy argued that this was further evidence of Baker's actual notice of the

---

[1] Plaintiffs also listed Coast to Coast Manpower, LLC, Keystone Freight Corp., and Schneider National, Inc. as defendants in this action, but subsequently filed voluntary notices of dismissal with prejudice of these defendants.

danger of cutting a taught cable and of his assumption of the risk. Plaintiffs filed a motion to strike Best Buy's Supplemental Motion, or in the alternative, requested leave to file a response ("Motion to Strike"). Best Buy then filed a motion in opposition to Plaintiffs' Motion to Strike and for leave to file its Supplemental Motion. The trial court granted Best Buy's motion to supplement its pending motion for summary judgment and denied Plaintiffs' Motion to Strike, thereby disallowing Plaintiffs a surreply to the Supplemental Motion. Ultimately, the trial court granted summary judgment in favor of Best Buy, ruling that reasonable minds could only conclude that Best Buy did not owe a duty of care to Baker.

{¶5} It is from this judgment the Bakers appeal, asserting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED WHERE IT DETERMINED THAT BEST BUY STORES, L.P. DID NOT OWE A DUTY OF CARE TO JAMEY BAKER.**

### Assignment of Error No. II

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHERE IT PERMITTED BEST BUY STORES, L.P. TO SUPPLEMENT ITS MOTION FOR SUMMARY JUDGMENT AND COMMITTED ADDITIONAL ERROR WHERE IT DID NOT PERMIT JAMEY BAKER TO OPPOSE BEST BUY STORES, L.P.'S SUPPLEMENTAL MEMORANDUM.**

***Assignment of Error No. III***

**THE TRIAL COURT ERRED WHERE IT GRANTED SUMMARY JUDGMENT IN FAVOR OF BEST BUY STORES, L.P.**

*Assignment of Error No. I*

{¶6} In their first assignment of error, Appellants challenge the trial court's award of summary judgment to Best Buy, with two main contentions. First, Appellants challenge the trial court's determination that Best Buy did not owe a duty of care to Baker. Specifically, Bakers contend that cutting seals is not inherently dangerous, and if it is, Best Buy actively participated in the activity. Further, Appellants argue that primary assumption of the risk as a bar to recovery is not applicable in this case.

{¶7} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the

moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶8} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his or her argument. *Id.* The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he or she may not rest on the mere allegations or denials of his or her pleadings. *Id.* at 293; Civ.R. 56(E).

*Duty to Baker*

{¶9} Whether a duty exists is normally a question of law. *See Wheeling & L.E.R. Co. v. Harvey*, 77 Ohio St. 235 (1907), *Mussivand v. David*, 45 Ohio St.3d

314, 318 (1989). R.C. 4101.11, commonly known as Ohio's frequenter statute, provides:

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

{¶10} The duty owed to frequenters pursuant to this statute "is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 249 (1987), citing *Westwood v. Thrifty Boy Super Markets*, 29 Ohio St.2d 84 (1972). However, where the frequenter is the employee of an independent contractor, the duty to frequenters pursuant to this statute does not extend to hazards which are inherent and necessarily present in the nature of the work performed. *Eicher* at 249, *Schwarz v. Gen. Elec. Realty Corp.*, 163 Ohio St. 354 (1955). With respect to this exception, the Supreme Court of Ohio has explained:

> Work is inherently dangerous when it creates a peculiar risk of harm to others unless special precautions are taken. * * * To fall within the inherently-dangerous-work-exception, it is not necessary that the work be such that it cannot be done without a risk of harm to others,

or even that it be such that it involves a high risk of such harm. It is sufficient that the work involves a risk, recognizable in advance, of physical harm to others, which is inherent in the work itself. *Pusey, Exr. v. Bator et al.*, 94 Ohio St.3d 275, 279-280, 2002-Ohio-795, citing 2 Restatement of the Law 2d, Torts, Section 427, at 416, Section 427, Comment b (1965).

{¶11} Despite the inherently dangerous nature of the work, if a general contractor or employer actively participates in the work of the subcontractor, the employer owes a duty of care to the independent contractor's employees. *Sopkovich v. Ohio Edison Co.*, 81 Ohio St.3d 628 (1998), citing *Schwarz*, *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St. 3d 206 (1983). The Ohio Supreme Court has held that "active participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace." *Sopkovich* at 643.

{¶12} In *Cafferky v. Turner Constr. Co.*, the general contractor hired an independent subcontractor to drill and install caisson foundations. 21 Ohio St.3d 110 (1986). Pursuant to its contract, the general contractor retained control over safety procedures at the project. In one of the caisson holes, the subcontractor detected methane gas and made certain efforts to dispel the gas. Nevertheless, the subcontractor allowed two of its employees to enter the hole to burn off, with a cutting torch, a portion of a twisted metal casing. While in the hole, one of the

employees struck his flint to light a torch. As a result, an explosion occurred and both employees later died from their injuries. The Ohio Supreme Court found that although the general contractor retained control over the safety procedures, it had not actively participated in any action or decision that led to the fatal injuries.

{¶13} In *Sopkovich*, the Ohio Supreme Court found that the evidence supported a finding of active participation based on Ohio Edison's retention and exercise of control over a critical aspect of the work environment. 81 Ohio St.3d 628 (1998). In that case, Ohio Edison hired an independent contractor to paint steel structures at defendant's electric substation. Ohio Edison retained exclusive control over the determination of which electrical circuits or lines would be de-energized at the substation and over the process of activating and de-activating the lines. While painting certain I-beams that were located thirty to forty feet from the ground, the independent contractor's employee received a massive electrical shock, causing him to fall from the structure to the ground. The court's holding regarding whether Ohio Edison owed a duty to the injured employee was two-fold: first, Ohio Edison had no duty of care relating to its alleged control over plaintiff's work activities as a painter, since those activities were directed by the independent contractor. Second, Ohio Edison was not entitled to summary judgment on the entire duty of care issue because a duty could have arisen from Ohio Edison's retention and exertion of control over a critical variable in the work environment,

specifically the de-electrification of specific electrical conductors in the work area. *Id.* at 653.

{¶14} In the case at bar, Baker testified that he was employed by Coast to Coast and had been assigned to work at the Best Buy distribution center as a truck driver and trailer spotter. Baker's duties entailed driving trucks around the yard in order to pull trailers in and out of docks for unloading and also cutting the seals on the trailers. For instructions on when to move certain trailers, Baker received a daily list from Best Buy. Best Buy would control when certain trailers should be moved by activating light signals at the docks. Baker also testified that Best Buy required everyone in the yard at the distribution center to wear orange vests.

{¶15} Baker was trained by Jerry Fletcher ("Fletcher"), a lead truck driver and spotter for Coast to Coast. Fletcher trained Baker on how to cut or break the cable and bolt seals on the trailers. Fletcher told Baker to turn his head while cutting the seals with cutters. Baker testified that he was to turn his head so that the cable does not hit him in the face. During his training he learned that a tight cable, or one with tension on it, could snap, fly some distance, and strike the cutter.

{¶16} Baker testified that he was injured on November 3, 2007 when he was cutting a taught cable seal. The cable was a braided, quarter-inch cable that was wound around the trailer three times instead of two, which made the cable

tight. When he cut the cable, a piece of the cable became lodged in his right eye, causing him severe pain and injury. Baker reported the injury to his supervisor at Coast to Coast, Casey Vondevander ("Vondevander"). Baker was sent for medical treatment and has permanent vision problems due to this incident.

{¶17} Baker testified that prior to this incident, he had been struck daily in the arms by cables. This caused him to be concerned about getting struck in the face or eye. He reported his concerns several times to Fletcher and Vondevander, both Coast to Coast employees, but never to a Best Buy employee. Baker said that he was never offered personal safety equipment such as glasses and that he never requested any such equipment.

{¶18} Baker testified that Best Buy never trained him in any fashion on breaking seals or on dock procedures. The cable cutters used to break the seals were located in the trucks.

{¶19} During Fletcher's deposition he testified that he is a lead yard driver for Coast to Coast. He was responsible for driving trucks at the distribution center, training other drivers and spotters, and cutting seals. He testified that Coast to Coast owned the yard trucks and that a pair of safety glasses was in each truck, but that no one wore them. Fletcher testified that Best Buy provided cutters, gloves, and glasses. Fletcher stated that he neither wore safety glasses while cutting the seals prior to Baker's incident, nor wore them while training others.

Fletcher would, however, turn his head when cutting the seals. He testified that he informed the trainees that glasses were available if they wanted them.

{¶20} Fletcher also testified that Best Buy never directed the manner in which he and the other Coast to Coast employees were to break the seals or perform other job duties. Rather, Best Buy relied on Coast to Coast to perform all yard operations.

{¶21} Joe Radabaugh ("Radabaugh"), a yard driver for Coast to Coast, testified that he was trained by Fletcher. He testified that Best Buy made gloves available, but was not aware that there were glasses available for use. Radabaugh stated that he had been hit by pieces coming lose from a cable seal.

{¶22} James Steedman ("Steedman"), regional transportation manager for Best Buy, testified that Best Buy provided orange vests to Coast to Coast employees. Steedman stated that Best Buy does not get involved in third-party accidents.

{¶23} Bryan Fruth, the regional asset protection manager and facilities manager for Best Buy, testified in his deposition that he is in charge of maintenance and safety programs and practices. He also testified that Best Buy never required Coast to Coast employees to wear orange vests but that it would supply the vests if Coast to Coast requested them. Best Buy did not supply any other protective equipment to Coast to Coast.

**{¶24}** After reviewing the foregoing evidence, we find that Best Buy did not owe a duty to Baker. First, cutting a taught cable seal from a trailer is inherently dangerous, in this particular case. It creates a peculiar risk of harm, recognizable in advance, to the cutter unless special precautions are taken. *See generally Pusey*, 94 Ohio St.3d 275, 2002-Ohio-795. Baker and Radabaugh acknowledged this risk when they testified that they had been struck by this type of seal in the past. The precaution utilized by Fletcher, Baker, and Radabaugh of turning their heads before cutting the seal is further evidence of this risk. Because the risk of injury is inherent in this type of work, was recognized in advance of Baker's injury, and a reasonable person would recognize the necessity of taking special precautions to prevent the injury, cutting the taught seal was inherently dangerous in this case.

**{¶25}** Second, we find that there was no active participation on behalf of Best Buy. The Bakers argue that Best Buy did actively participate in Baker's work because it generally controlled the distribution center, it directed the drivers where and when to move the trailers, it required everyone in the yard to wear orange vests, and it provided the cutters and safety glasses. Construing the facts most strongly in favor of Appellants, this argument nonetheless fails for three reasons.

{¶26} First and most importantly, Best Buy did not sufficiently direct or control Baker's work activities, specifically the manner in which Baker cut the cable seal, in order to rise to the level of active participation. *See generally Sopkovich*, 81 Ohio St.3d 628. In *Hirschbach v. Cincinnati Gas & Elec. Co.*, the Ohio Supreme Court held that summary judgment for defendant electric company was inappropriate where a jury could conclude that it had sole control over the safety features necessary to eliminate a hazard. 6 Ohio St.3d 206. In that case, the defendant's inspector denied the independent contractor's employees request to reposition the winch tractor. An employee of the independent contractor was ultimately injured due to the improper position of the winch tractor. Because defendant had refused to eliminate the hazard which ultimately led to the employee's injuries, and interfered with the mode of the job operation, a jury could conclude that defendant owed a duty to the independent contractor's employee.

{¶27} In the instant case, Fletcher testified that Best Buy never trained Coast to Coast truck drivers or controlled the manner in which they cut the seals or performed other duties, but rather, that Best Buy relied solely on Coast to Coast to perform yard operations. Additionally, both Radabaugh and Baker testified that Fletcher, a Coast to Coast employee, trained them on the proper procedure for cutting cables. Baker testified that if he had any concerns, he discussed them with

Coast to Coast personnel only. Further, there was no evidence that Best Buy instructed Coast to Coast employees to use the provided equipment or determined the manner in which the equipment was to be used. Because Best Buy did not control the manner in which Baker cut the cable seal and neither gave nor denied permission for a critical act that led to his injury, it did not actively participate or control the work activities and therefore did not owe a duty to Baker.

{¶28} Secondly, general control over work activities or the worksite of independent contractors is insufficient to demonstrate active participation. Active participation requires more than merely exercising a general supervisory role over the project, but must rise to the level of directing the activity which resulted in the injury or giving or denying permission for the critical act that led to the injury in order to extend a duty from the general contractor to the subcontractor's employees. *Bond v. Howard Corp.*, 72 Ohio St.3d 332 (1995), at syllabus, citing *Cafferky*, 21 Ohio St.3d 110.

{¶29} In the instant case, however, Best Buy's involvement at the distribution center does not rise to the level of active participation. Its retention over the trailer logistics at the yard and its requirement that everyone at the yard wear orange vests do not warrant extending a duty to its independent contractor's employee as it did not direct or control the specific activity which led to Baker's injuries, e.g. cutting the cable seal.

{¶30} Thirdly, the provision of materials is insufficient to establish active participation. *See, e.g., Wise v. Zachrich Constr. Co.*, 3d Dist. No. 4-89-1 (June 13, 1990) (the mere provision of a defective scaffold from which plaintiff fell and was injured was insufficient to establish active participation), *Queen v. Huntley*, 4th Dist. No. 02CA756, 2003-Ohio-4554 (without instructing or guiding worker on how to paint roof, building owner and supervisor did not actively participate in the work despite having provided the materials), *Szotak v. Moraine Country Club, Inc.*, 172 Ohio App.3d 34, 2007-Ohio-2974 (2nd Dist.) (provision of equipment and general instructions on how to complete painting job failed to establish active participation where injuries were caused due to the placement of the ladder).

{¶31} In the case sub judice, Appellants argue that Best Buy's provision of cable cutters, safety glasses, and orange safety vests establishes its active participation. Viewing the evidence most favorably to Appellants and assuming that Best Buy did provide the cable cutters, glasses, and vests to Coast to Coast employees, we nonetheless find that the provision of materials alone is insufficient to establish active participation. Because Best Buy did not control nor gave or denied permission for the activity which resulted in the injury, the cutting of the cable seals, there was no active participation on behalf of Best Buy and thus no duty owed to Baker.

{¶32} Having found that Best Buy does not owe Baker a duty of care, the issue of whether primary assumption of the risk is available and if so, whether Baker assumed the risk is moot and we decline to address it.

{¶33} Accordingly, we overrule Plaintiffs' first assignment of error.

*Assignment of Error No. II*

{¶34} In their second assignment of error, Appellants argue that the trial court committed reversible error by granting Best Buy's motion to supplement its motion for summary judgment and by denying Plaintiffs' Motion to Strike. Specifically, Plaintiffs argue that in the Supplemental Motion, Best Buy submitted new evidence and a new argument in support of summary judgment. Plaintiffs argue that without the ability to respond, they were subjected to "summary judgment by ambush." Appellant's Reply Brief, p. 7. We disagree.

{¶35} It is well-established that a party moving for summary judgment must expressly delineate each basis on which it seeks summary judgment in its motion so as to provide the opposing party a meaningful opportunity to respond. *Buren v. Karrington Health, Inc.*, 10th Dist. No. 00AP-1414, 2002-Ohio-206, citing *State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 14 (1991). The danger in allowing a new argument to be asserted in a reply or a supplemental motion is that the opposing party does not have an opportunity to respond, *Lawson v. Mahoning Cty. Mental Health Bd.*, 7th Dist. No. 10 MA 23,

2010-Ohio-6389, ¶ 50, citing *Buren*, and may be subjected to summary judgment by ambush. *See, e.g., Smith v. Ray Esser & Sons, Inc.*, 9th Dist. No. 10CA009798, 2011-Ohio-1529 (reversible error to grant summary judgment based solely on arguments raised in the reply brief), *Lawson* at ¶ 51, citing *Internatl. Fid. Ins. Co. v. TC Architects, Inc.*, 9th App. Dist. No. 23112, 2006-Ohio-4869, ¶ 11, citing *Collins v. Emro Marketing, Co.*, 10th Dist. No. 98AP-1014 (May 11, 1999). Therefore, when a new argument is raised in a reply or supplemental motion for summary judgment, the proper procedure is to strike the reply or supplemental motion or, alternatively, to allow the opposing party to file a surreply. *Smith* at ¶ 15, citing *Lawson* at ¶ 50-51.

{¶36} In the instant case, the trial court granted Best Buy's motion for leave to file its Supplemental Motion and denied Bakers' Motion to Strike. In its original motion for summary judgment, Best Buy argued that there was no genuine issue of material fact that it did not owe a duty of care to Baker since 1) Baker had actual knowledge of the hazard, 2) it did not actively participate in Baker's job or control the manner in which he cut the cables, and 3) Baker assumed the risk. In its Supplemental Motion, Best Buy argued that Baker had actual notice of the risk of being struck in the eye as all the bolt cutters contained the following warning: "WARNING PROTECT YOURSELF AND OTHERS WHEN CUTTING WEAR SAFETY GLASSES" and all cable cutters contained

the warning: "**WARNING**: METAL FLIES WHEN CUT WEAR SAFETY GLASSES." Defendant's Supplemental Motion, Docket No. 76. These warnings were discovered by Best Buy's expert while he performed a site inspection of the distribution center in May 2011. An affidavit of Jerry Fletcher describing the warning labels was attached to the Supplemental Motion. Best Buy argued that these labels evidence that Baker was explicitly warned of the very risk that caused his injury. It then requested that its motion for summary judgment "be granted in its entirety based on the evidence and law presented in the original [m]otion for [s]ummary [j]udgment. This new evidence of warning adds additional force to the original arguments and raises no new issues of law." *Id*. at p. 2.

{¶37} In its Motion to Strike and memorandum in support, the Bakers argued that there was no legal basis to file a Supplemental Motion, or alternatively, that the new evidence, if deemed credible, demonstrates a genuine issue of material fact and the motion for summary judgment should be denied. On appeal, the Bakers argue that they were subject to summary judgment by ambush, and that it was reversible error to grant summary judgment on grounds not specified in the motion for summary judgment without allowing them an opportunity to respond. They also contest the legitimacy of the new evidence presented in the Supplemental Motion.

{¶38} We find that the trial court committed error in granting Best Buy's motion for leave to file its Supplemental Motion, which presented new evidence, while denying Appellants' Motion to Strike and an opportunity to respond. We hold, however, that this was harmless error as the trial court did not rely on or cite to the evidence of the warning labels in support of its finding that "reasonable minds could only conclude that Best Buy did not have a duty toward the plaintiff Jamey Baker * * * and that Best Buy's motion for summary judgment should be granted." Decision and Judgment Entry, Docket No. 85. Because the trial court granted summary judgment on the arguments made in the original motion for summary judgment, to which Appellants filed a response, and not on any new arguments or evidence in the Supplemental Motion, Appellants were not subject to summary judgment by ambush.

{¶39} Accordingly, we overrule Appellants' second assignment of error.

*Assignment of Error No. III*

{¶40} In their third assignment of error, Appellants argue that the trial court impermissibly weighed the evidence and found that Best Buy did provide safety glasses to Coast to Coast employees. In doing so, Appellants argue that the trial court directly rejected Radabaugh's testimony that safety glasses were not available.

{¶41} In light of our resolution of the first assignment of error that Best Buy was entitled to summary judgment, Appellants' third assignment of error is moot and we decline to address it.  App.R. 12(A)(1)(c).

{¶42} Having found no error prejudicial to Appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J., concurs in Judgment Only.**

**WILLAMOWSKI, J., concurs.**

**/jlr**