[Cite as *Roseberry v. Diepenbrock*, 2017-Ohio-8788.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY**

**MATTHEW ROSEBERRY,**

    **PLAINTIFF-APPELLANT,**               **CASE NO. 1-17-29**

    **v.**

**STEVEN DIEPENBROCK, ET AL.,**          **O P I N I O N**

    **DEFENDANTS-APPELLEES.**

**Appeal from Allen County Common Pleas Court
Trial Court No. CV 2016 0328**

**Judgment Affirmed**

**Date of Decision: December 4, 2017**

**APPEARANCES:**

    *Kevin W. Attkisson* **for Appellant**

    *J. Alan Smith* **for Appellee, Steve Diepenbrock**

**SHAW, J.**

{¶1} Plaintiff-appellant, Matthew Roseberry ("Roseberry"), brings this appeal from the July 10, 2017, judgment of the Allen County Common Pleas Court granting summary judgment in favor of defendant-appellee, Steven Diepenbrock ("Diepenbrock"). On appeal, Roseberry argues that the trial court erred in granting Diepenbrock summary judgment and dismissing Roseberry's complaint.

*Relevant Facts and Procedural History*

{¶2} Diepenbrock is the owner of a home at 3280 Ada Road in Lima, Ohio. Diepenbrock has lived in the home for twenty-five years since it was originally built. When the home was built, Diepenbrock was involved in overseeing some of the construction and he also did some of the electrical work with his father-in-law.

{¶3} In early July of 2014, Diepenbrock and some others were sitting on his deck and they saw a number of bats, perhaps as many as 50, coming out of the roof/attic by a "dormer" or "gable vent." (Diepenbrock Depo. at 8). Diepenbrock went into the attic to see if he could find any sign of bats living there. The attic was unfinished and not used for storage space. It was accessible via a ladder that came out of the ceiling in a closet on the north side of the house. Diepenbrock did not notice any sign of bats in the attic when he originally checked, so he called Terminex, a pest control company, to have them inspect his residence.

{¶4} Terminex sent Roseberry out to inspect Diepenbrock's home on July 22, 2014. Roseberry had been employed by Terminex for less than 2 years at the time, doing inspections and providing quotes for pest control. Those pests included termites, bugs, ants, bats, rodents and wildlife.

{¶5} Roseberry arrived at Diepenbrock's residence at approximately 9 a.m. on July 22, 2014. Diepenbrock informed Roseberry about the suspected bat problem and they walked around the perimeter of the house together to observe the area where Diepenbrock had seen the bats. Afterward, Roseberry was led to the attic by Diepenbrock.

{¶6} At the top of the ladder in the attic was a plywood platform to stand on. However, the remainder of the attic flooring was not covered, exposing struts, insulation, and drywall. There was a stretch of wooden planks placed on certain spots on the floor allowing easier access to various parts of the attic.

{¶7} Through his employment with Terminex, Roseberry had been trained in working in attics, dealing with ladders and heights. His training for attics instructed him to step on the struts and stay on a clear path. He was specifically instructed to avoid stepping on drywall and he was aware of the risks of falling through drywall in an attic. He had worked in attics 20-30 times previously.

{¶8} When Roseberry entered Diepenbrock's attic, he stood first on the plywood landing. Diepenbrock indicated to Roseberry that he should walk on the

wooden plank walkway, that the boards were secure and that Diepenbrock had walked on them numerous times himself. Despite Diepenbrock's assurances, Roseberry tapped each board as he walked across them, checking for firmness to make sure they were solid. It was his standard procedure, and Roseberry indicated that he did not rely on Diepenbrock's statement that they were secure; rather, he wanted to verify for himself that the boards were secure, "[b]ecause you never trust anybody's true thoughts or what they say." (Roseberry Depo. at 54).

{¶9} While Roseberry was walking across one of the boards, he dropped, falling through the drywall in the ceiling 18 feet to the floor in the living room below the attic. His arms caught briefly on the struts on the way down. The plank he had been walking on fell with him, unbroken, to the floor below.

{¶10} Diepenbrock, who had been standing on the ladder to the attic observing, went down and called an ambulance for Roseberry. Shortly thereafter, Roseberry was taken to the hospital and treated for his injuries, which included multiple broken bones in his left leg and bruising to his arms. The breaks resulted in multiple surgeries, 12 screws put into his feet and some ongoing issues with mobility.

{¶11} After the incident, Diepenbrock had his ceiling repaired, and he put the plank back in the attic, noting that it was slightly too short (perhaps an inch to an inch and a half) and that it was the only plank in the attic that was not screwed

down. Diepenbrock indicated he had no knowledge of the plank being too short, or that it was not fastened down. He stated he had been in the attic at least 10-20 times over the years walking over the planks, including twice in July looking for bats before Roseberry came out to inspect for Terminex.

{¶12} Diepenbrock indicated that he could not remember whether the builders of the house put the planks in the attic or whether he had. Roseberry testified in his deposition that Diepenbrock told him that Diepenbrock had installed them. Regardless, Diepenbrock indicated that he had no knowledge of any issues with the plank.

{¶13} On June 13, 2016, Roseberry filed a complaint against Diepenbrock and the Bureau of Worker's Compensation. Roseberry alleged that he was injured as a result of Diepenbrock's negligence. Roseberry indicated that the Bureau of Worker's Compensation may have an interest in the action due to potentially paying medical bills, expenses or other benefits to Roseberry; however, the Bureau filed an answer indicating it had no interest in the litigation as Terminex was a self-insured employer, and thus any subrogation rights belonged to the employer.

{¶14} On June 22, 2016, Diepenbrock filed an answer denying negligence.

{¶15} The matter proceeded through discovery with depositions being taken of both Diepenbrock and Roseberry. Following the depositions, on May 30, 2017, Diepenbrock filed a motion for summary judgment, alleging that the activity

Roseberry was engaged in was a dangerous activity, that he was aware of the potential dangers of working in an attic, and that Diepenbrock had no superior knowledge of any of the dangers in the attic.

{¶16} On June 13, 2017, Roseberry filed a response, claiming that it was undisputed that Roseberry was an invitee and was owed a duty of ordinary care. Roseberry indicated that merely operating in an attic was not an open and obvious danger, and that the plank that fell was certainly not open and obvious. Roseberry also argued that Diepenbrock was on at least constructive notice of the defect, if not actual notice, and thus had superior knowledge since he told Roseberry he installed the planks.

{¶17} On June 20, 2017, Diepenbrock filed a reply in support of summary judgment.

{¶18} On July 10, 2017, the trial court filed a judgment entry analyzing the issues and ultimately granting summary judgment in favor of Diepenbrock. The trial court determined that Roseberry was an invitee on the premises and that he was owed a duty of ordinary care to maintain the premises in a reasonably safe condition for use, but the owner had "no duty to remedy inherent hazards necessarily present because of [the] character of work to be done." (Doc. No. 31) citing *Schwarz v. Gen Elec. Realty Corp*, 163 Ohio St. 354 (1995). The trial court cited authority indicating that an owner of a premises would not be liable for an injury resulting

from a danger inherent in a task when the injury was reasonably foreseeable to the independent contractor. *Id.* citing *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103 (1953), at paragraph 2 of the syllabus.

**{¶19}** The trial court found that it was undisputed that Roseberry was aware of the dangers of working in an attic, that it was undisputed that Roseberry tested each plank before he walked onto it, and that it was undisputed that Roseberry did not rely on any statements made by Diepenbrock that the planks were secure. Thus the trial court determined that Diepenbrock should be awarded summary judgment.

**{¶20}** The trial court went on to address an additional argument by Roseberry, wherein Roseberry argued that an exception should apply permitting liability in this instance if the owner actively participated in the work that was being done by the independent contractor. The trial court found that Diepenbrock's actions of providing Roseberry with a flashlight and leading him to the attic did not constitute participation. The trial court thus awarded summary judgment in Diepenbrock's favor and dismissed Roseberry's complaint.

**{¶21}** It is from this judgment that Roseberry appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**

**Whether the Trial Court erred by ruling that there was no genuine issue of material [fact as to] whether the Appellant was engaged in an inherently dangerous activity and sustained the Appellee's Motion for Summary Judgment.**

**Assignment of Error No. 2**
**Whether the Trial Court erred by ruling that there was no genuine issue of material fact [as to] whether the Appellee actively participated in the activity that resulted in the Appellant's injuries and sustained the Appellee's Motion for Summary Judgment.**

{¶22} As the discussion is interrelated, we elect to address the assignments of error together.

*First and Second Assignments of Error*

{¶23} In Roseberry's first assignment of error, he argues that the trial court erred by granting Diepenbrock's motion for summary judgment. Specifically, he argues that the trial court erred in finding that Roseberry was engaging in a dangerous activity with open and obvious hazards that precluded liability, and that the trial court erred in finding that Diepenbrock lacked superior knowledge of the purported hazard. In Roseberry's second assignment of error, he argues that the trial court erred in determining that Diepenbrock did not participate in Roseberry's work.

Standard of Review

{¶24} We review a trial court's decision on a motion for summary judgment *de novo*. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this Court conducts an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 3d Dist. Hancock No. 5-16-01, 2017-Ohio-258, ¶ 16,

citing *Brown v. Cty. Commrs. of Scioto Cty.,* 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted).

**{¶25}** Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. Franklin No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

### Relevant Authority

**{¶26}** In this case, Roseberry alleges that Diepenbrock was negligent. "It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury

proximately resulting therefrom." *Armstrong v. Best Buy Co., Inc*., 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77 (1984).

**{¶27}** It is undisputed that Roseberry was an "invitee," and that Diepenbrock owed the duty of " 'exercising ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation, and to inform the invitee of hazardous conditions of the premises and activities thereon unknown by and not obvious to the invitee.' " *Schwarz v. General Elec. Realty Corp*., 163 Ohio St. 354, 358 (1955), quoting *Bosjnak v. Superior Sheet Steel Col*., 145 Ohio St. 538 (1945). Nevertheless, an owner is not an insurer of an invitee's safety and owes no duty to protect invitees from open and obvious dangers on the property. *Strayer v. Cox*, 2d Dist. Miami No. 2015-CA-6, 2015-Ohio-2781, ¶ 30, quoting *Blair v. Vandalia United Methodist Church*, 2d Dist. Montgomery No. 24082, 2011-Ohio-873, ¶ 15.

**{¶28}** The Supreme Court of Ohio has held that under the common law of negligence,

> **[w]here an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.**

> **One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance.**

*Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103 (1953) at paragraphs 1 and 2 of syllabus; *Szotak v. Moraine Country Club, Inc.*, 2d Dist Montgomery No. 21618, 2007-Ohio-2974, ¶ 13.

{¶29} "In other words, owners of premises do not owe a duty of protection to independent contractors or the employees of independent contractors that they employ, even when the work being performed is inherently dangerous." *Cracraft v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 26808, 2016-Ohio-3272, ¶ 12, *appeal not allowed*, 147 Ohio St.3d 1437, citing *Lacey v. Sports Award, Inc.,* 2d Dist. Montgomery No. 21346, 2006–Ohio–4401, ¶ 23, citing *Routzahn v. Garrison,* 2d Dist. Montgomery No. 21190, 2006–Ohio–3652, ¶ 49. "The independent contractor is presumed to know and appreciate that there is a danger surrounding the performance of the work it has undertaken." *Cracraft* citing *Szotak* at ¶ 13, citing *Wellman* at paragraph two of the syllabus.

{¶30} Notably, there is an exception to the rule announced in *Wellman*, which Roseberry argues is applicable in this case. In *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St.3d 206 (1983), the Supreme Court of Ohio held that

> **One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.**

*Hirschbach* at syllabus.

Analysis

{¶31} The vast majority of the facts in this case are undisputed. Roseberry worked for Terminex and was dispatched to the home of Diepenbrock to investigate a potential problem with bats. Prior to Roseberry's arrival, Diepenbrock had been in the attic twice in July of 2014 to look for evidence of bats. Diepenbrock had been in his attic a number of times over the years since the home was built, using the planks that were on the floor to get around. He had no knowledge that one plank was slightly too small or that it was not fastened down (even assuming the plank was the reason for Roseberry's fall).

{¶32} Roseberry had been trained to work in attics, and he had been trained regarding the dangers inherent in working in attics. When Roseberry went into Diepenbrock's attic, Diepenbrock told him to walk on the planks and that they were secure. However, Roseberry stated affirmatively that he did not rely on Diepenbrock's statements, and that he checked each plank by tapping his foot on it before stepping onto it. Then, while traversing the planks, Roseberry fell through the attic onto the living room floor 18 feet below.

{¶33} On appeal, Roseberry first argues that the trial court erred in finding that he was engaging in work that had real or potential danger. Contrary to this argument, Roseberry explicitly stated in his deposition that he had been trained in working in dangerous areas such as attics and that he was aware from his training that a fall from an attic could result in serious injury or even death. Roseberry was trained in how to maneuver through an attic, and to avoid stepping on drywall or insulation. The nature of Roseberry's activity would fall under work that had real or potential danger, even by Roseberry's own admissions. *See Strayer v. Cox*, 2d Dist. Miami No. 2015-CA-6, 2015-Ohio-2781, ¶¶ 33-34 (finding that where plaintiff cut down a limb from a deteriorating tree, danger of deteriorating limb falling was open and obvious, and plaintiff, given his experience, was in better position to observe potential defects than owner due to his training and experience); *Detrick v. Heidtman Steel Products, Inc.*, 677 Fed.Appx. 240 (6th Cir.2017) ("[O]ne of the reasons individuals are rarely found in attics is due to the dangerous conditions often present therein. It is likely that an average person would know of the risks associated with working in an attic[.]"). Working in an unfinished attic would pose the open and obvious potential danger of falling. Roseberry was aware of this danger. His argument on this issue is thus not well-taken.

{¶34} Roseberry next argues that the trial court erred in finding that Diepenbrock exercised ordinary care in maintaining the premises and that the trial

court erred in finding that Diepenbrock did not have superior knowledge of any defect with the plank that fell. While Roseberry may argue that Diepenbrock *should* have been aware of a potential problem with one of his planks in his attic, there is absolutely no evidence that Roseberry *was* actually aware of any such problem. In fact, the only evidence indicates that Diepenbrock was entirely unaware of any issues with the plank in his attic. He had traversed the planks in the attic at least twice in the month preceding Roseberry's fall, including just days before Diepenbrock's fall, and he did not notice any issues at that time. *See Waite v. Thomas Emery's Sons*, 32 Ohio Law Abs. 521, 32 N.E.2d 764, 765 (1st Dist.1940) ("The fact that [a plank in an attic] gave way may not be taken in itself as proof that the [owner] was negligent. Only speculation can present a situation which would justify conclusion fixing liability upon the defendant.").

{¶35} Notwithstanding the fact that there is no evidence whatsoever that Diepenbrock had any knowledge of any issues with the plank in question, Roseberry explicitly stated that he did not rely on any assurances made by Diepenbrock that the planks were stable. Therefore, we fail to see any evidence that Diepenbrock did not exercise reasonable care or that he breached a duty owed to Roseberry and Roseberry's first assignment of error is overruled.

{¶36} In Roseberry's second assignment of error, he argues that there was an exception permitting liability in these circumstances if Diepenbrock, as the

homeowner, actively participated in the work. "For purposes of establishing liability * * * 'actively participated' means that the [individual] directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." *Bond v. Howard Corp.*, 72 Ohio St.3d 332 (1995) at syllabus, quoting *Cafferkey v. Turner Constr. Co.*, 21 Ohio St.3d 110 (1986).

{¶37} The evidence in the record indicates that Diepenbrock showed Roseberry around his home and that he showed Roseberry how to access the attic. Diepenbrock lent Roseberry a powerful flashlight when Roseberry discovered the batteries were dead in his. Diepenbrock was on the ladder to the attic while Roseberry was in the attic, and Diepenbrock stated to Roseberry to stay on the planks in the attic. All of this is very typical of a homeowner showing a problem to someone coming to fix it or investigate it. None of Diepenbrock's actions amount to anything remotely resembling actual participation in the work, even assuming that such an exception applied in these circumstances. Thus we cannot find that the trial court erred in awarding summary judgment to Diepenbrock on this issue. Roseberry's second assignment of error is therefore overruled.

*Conclusion*

**{¶38}** For the foregoing reasons Roseberry's assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/jlr**