[Cite as *Hackney v. Ward*, 2014-Ohio-4413.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

JENNIFER HACKNEY

      Plaintiff-Appellant

v.

JUSTIN WARD, et al.

      Defendants-Appellees

Appellate Case Nos.    26175 and 26233

Trial Court Case No.   2013-CV-1122

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 3rd day of October, 2014.

. . . . . . . . . . .

THOMAS J. DIEHL, Atty. Reg. No. 0040870, 304 East Warren Street, Lebanon, Ohio 45036
     Attorney for Plaintiff-Appellant

STEPHEN V. FREEZE, Atty. Reg. No. 0012173, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
     Attorney for Defendant-Appellee Justin Ward

TODD SMITH, Atty. Reg. No. 0076794, 6047 Frantz Road, Suite 203, Dublin, Ohio 43017
     Attorney for Defendant-Appellee-Epic Technologies, LLC

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-appellant Jennifer Hackney appeals from an order granting summary judgment in favor of Defendant-appellee Justin Ward. Hackney contends that the trial court erred in granting summary judgment to Ward on her complaint, because Ward "actively participated" in her work by placing and extending the ladder from which she fell.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment in Ward's favor. There were no genuine issues of material fact, and Ward was not liable for the fall under a negligence theory. Hackney could not identify Ward's actions that breached a duty of care owed to Hackney and could not identify the cause of her fall. Accordingly, the judgment of the trial court will be Affirmed.

## I. Hackney is Injured When She Falls Off Ward's Roof
## While Trying to Descend A Ladder

{¶ 3} Jennifer Hackney is an independent contractor for Home Solutions, a company that conducts home roof inspections to determine if there is any damage to the roof and then manages the details of the home owner's claim with an insurance company. Hackney and Justin Ward are acquaintances, as Ward is friends with Hackney's brother.

{¶ 4} In August 2011, Hackney came to Ward's home to inspect his roof for potential damage. Although the inspection was free of charge, Hackney stood to gain a commission if Ward received compensation on a claim with his insurance company. Upon arriving at Ward's home, Hackney realized that she would need to climb onto the roof in order to determine if there was any damage. Hackney Deposition, p. 61. She asked Ward if she could borrow his ladder and he agreed to let her use his ladder. Ward's extension ladder was too heavy for Hackney to

carry so Ward picked up the ladder and carried it over to the house. *Id.* at 62-64. Ward extended the ladder and set it up against the roof of the house. According to Hackney, the base of the ladder was placed either in the grass or on a cement platform. *Id.* at 65.

{¶ 5} Hackney asked Ward whether the ladder would be safer on Ward's wooden deck. *Id.* at 64. Ward stated that he believed the ladder was fine where it was situated. Hackney did not bring up the location of the ladder again. According to Hackney, after Ward initially placed the ladder, Hackney and Ward moved the ladder "around a little bit" and "[w]e would set it up, step back, see if it was tilted, if it was straight, you know, before I got on the roof." *Id.* at 72. Before climbing the ladder, Hackney agreed the ladder was in the position she wanted it in. *Id.* She also agreed that the ladder appeared okay before she began climbing it. *Id.* at 66.

{¶ 6} Ward braced the bottom of the ladder as Hackney successfully climbed the ladder to the roof. Hackney spent about five to ten minutes on the roof examining it for damage. *Id.* While she was examining the roof, Ward was working in his yard. After finishing her examination of the roof, Hackney yelled to Ward so that he would come over and brace the ladder as she descended from the roof. *Id.* at 74-75. As Ward braced the ladder, Hackney began to attempt to descend the ladder. She bent down, put her hands on top of the rails of the ladder, positioned her left foot in a way that she could pivot, and then began reaching her right foot down toward the second rung of the ladder. *Id.* at 80. Hackney described what happened next:

> As I was reaching down for the second rung, because the first rung was too
> close to the gutter - - I was reaching down for it with my foot, and Justin had said
> just a little further down, you're almost there, and then I placed my foot there,

went to swing - - you know, pivot onto - - put my full body weight onto the ladder, and that's when the ladder gave way or fell away from the house.

*Id.* at 81.

**{¶ 7}** Hackney was able to get her right foot on the second rung of the ladder and began transferring her full weight onto her right foot and the ladder. The ladder then fell away from the house and Hackney fell to the ground. *Id.* at 81-83. When asked about what caused her to fall to the ground, Hackney explained:

Q. What caused the ladder to give way?

A. That I'm not exactly sure. I know that my body weight was on the ladder. The next thing I know, I'm grabbing onto the gutter.

Q. Do you know what caused you to fall?

A. Either a - - it wasn't my ladder. I wasn't familiar with it. I had never used it. I don't know if that was the cause or improperly setting it up.

*Id.* at 81-82.

**{¶ 8}** Hackney suffered major injuries from her fall to the ground and was taken to a hospital by ambulance.

## II. Course of the Proceedings

**{¶ 9}** In February 2013, Hackney commenced an action against Justin Ward and Justin's wife, Sarah. Hackney alleged that she suffered injuries caused by Justin's negligence. Hackney subsequently voluntarily dismissed her claims against Sarah. Following discovery, Justin Ward moved for summary judgment on Hackney's complaint. The trial court granted

Ward's motion for summary judgment.   Hackney appeals from this judgment.

### III. Hackney Failed to Carry Her Burden to Produce Evidence of Causation

{¶ 10}   Hackney's sole Assignment of Error states:

THE TRIAL COURT ERRED IN FINDING THAT JUSTIN WARD WAS NOT LIABLE FOR HIS NEGLIGENCE AS A MATTER OF LAW AND IN GRANTING HIS MOTION FOR SUMMARY JUDGMENT.

{¶ 11}   Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in  favor of the nonmoving party, can only conclude adversely to that party.  *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶ 12}   When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review.  *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial."  *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980).  Therefore, the trial court's decision is not granted any deference by the reviewing appellate court.  *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 13}   In order to establish a cause of action for negligence, a plaintiff must demonstrate

that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶ 14} At the time Hackney was injured, she was engaged in inherently dangerous work that involved climbing and descending a ladder and working on a roof. (Citations omitted.) *Alapi v. Colony Roofing, Inc.*, 8th Dist. Cuyahoga No. 83755, 2004-Ohio-3288, ¶ 33. In negligence actions involving inherently dangerous work, the owner of the premises generally does not owe a duty to an independent contractor or its employees. *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N.E.2d 629 (1953), paragraph two of the syllabus. However, an exception to the general rule exists when the owner of the premises "actually" or "actively" participates in the work being performed by the independent contractor. *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St.3d 206, 452 N.E.2d 326 (1983), syllabus; *Cafferkey v. Turner Construction Co.*, 21 Ohio St.3d 110, 488 N.E.2d 189 (1986), syllabus.

{¶ 15} The "active participation" doctrine imposes a duty of care upon a property owner to an independent contractor involved in an inherently dangerous activity on the property when the owner: "(1) directs the activity resulting in the injury; (2) gives or denies permission for the critical acts that led to the [independent contractor's] injury; or (3) retains or exercises control over a critical variable in the workplace that caused the injury." (Citations omitted.) *Evans v. Dayton Power & Light Co.*, 4th Dist. Adams No. 03CA763, 2004-Ohio-2183, ¶ 33. "Absent 'active participation,' the general rule of *Wellman* applies and an owner cannot be liable in negligence due to the lack of a legal duty owed to the * * * independent contractor." *Evans* at ¶ 33.

{¶ 16}  The trial court found that, as a matter of law, Hackney had failed to show that Ward actively participated in her work in such a way to actually cause Hackney's injuries.  The trial court explained:

Based on Plaintiff's testimony, the Court concludes that Defendant Justin Ward did not "actively participate" in Plaintiff's work, nor did he direct the activity that resulted in Plaintiff's injury, nor did he deny permission for the critical acts that lead to Plaintiff's injury.  Neither Defendant instructed Plaintiff on the way or manner in which she was required to do her work; Plaintiff was largely left to her own devices in all respects of her inspection.  Defendant Justin Ward's actions are limited to allowing Plaintiff to use his ladder, transporting the ladder from its storage to the side of his home, and placing the ladder against the home on either a grass surface or a solid, concrete surface.  In concluding that Defendant Justin Ward did not actively participate in Plaintiff's work, the Court relies on two separate facts.  First, Plaintiff could have negated Defendant Justin Ward's involvement in the entire inspection by providing her own ladder and setting the ladder up herself.  By failing to bring her own tools which are necessary for the task, and requesting to use the tools of the homeowner, she does not then benefit from to [sic] the home owner's participation and provision of said tools such that it should be called "active participation."  Second, Plaintiff's own testimony reveals that the decision as to where to place the ladder was a joint discussion between herself and Defendant Justin Ward.  It appears from the transcript that Plaintiff suggested moving the ladder to the wooden deck, however,

it is also clear that the Defendant did not reject or prohibit her request, thereby denying her permission to reposition the ladder. It is apparent from Plaintiff's testimony that Defendant merely reassured her that his placement was solid, and she agreed with his reassurances.

Finally, it is notable that Plaintiff testified to have inspected the ladder and evaluated the safety of its placement, and ultimately concluded that its placement was safe such that she climbed to the roof of the home. Plaintiff testified that she doesn't remember whether the ladder was placed on the grass or on concrete, a fact which is notable since a concrete and a wooden surface seem to have practically the same stability as compared to the softer surface of grass. Furthermore, Plaintiff has not shown evidence that the grass or the concrete is more or less safe than the wooden deck. Additionally, Plaintiff fails to show evidence that it is common practice to place a ladder on a wooden surface rather than a concrete or grass surface. Thus, even if Defendant Justin Ward was to have exerted some amount of control or active participation, Plaintiff has provided no evidence that his decision was a breach of the duty owed and actually caused or created the harm to Plaintiff.

Dkt. 40, p. 7-8.

{¶ 17} Hackney contends that the trial court erred in finding that, as a matter of law, Ward did not actively participate in Hackney's work. According to Hackney, Ward's positioning and extension of the ladder constitutes active participation. We conclude that even if we were to assume that Ward actively participated in Hackney's work, which establishes a duty

of care, Hackney has failed to demonstrate a breach of that duty and that the breach proximately caused her injuries.

{¶ 18} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." *Id.* at 293; Civ.R. 56(C).

{¶ 19} Ward carried his burden on summary judgment by filing the deposition testimony of Ward and Hackney. Ward testified that he positioned the ladder on an appropriate surface and extended the ladder to an appropriate height. Ward Deposition, p. 34-37. Hackney testified that she was not sure what caused her fall to the ground, but that her fall could have been the result of her lack of familiarity with the ladder. This deposition testimony was sufficient to carry Ward's summary judgment burden on the issues of breach of duty and proximate cause.

{¶ 20} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

**{¶ 21}** We conclude that Hackney failed to set forth specific facts that show there is a genuine issue of material fact regarding breach of duty and causation. Hackney conceded she is unsure of what caused her and the ladder to fall as she tried to climb onto the ladder from the roof. She conceded at her deposition that it could have been her lack of familiarity with the ladder that caused the fall. There is no evidence in the record before us that would demonstrate that the placement or extension of the ladder was the cause of the accident or that any action that Ward made or directed was a violation of the duty he owed Hackney or was the cause of the accident and injuries. Rather, Hackney speculates that the positioning or the extension of the ladder had to be the cause of the fall because there is no other logical explanation of why Hackney and the ladder would fall to the ground. But there is no evidence in the record that the positioning or extension of the ladder was negligent or that it caused Hackney to fall to the ground. Moreover, there are a myriad of logical reasons why a person and ladder could fall to the ground. Climbing a ladder and working on a roof are considered inherently dangerous activities because they involve a high risk of falling and being injured regardless of what precautions are taken.

**{¶ 22}** The burden was shifted to Hackney to provide facts on which a jury could reasonably conclude that Ward's actions breached a duty he owed to Hackney and proximately caused Hackney's injuries. Hackney failed to sustain her burden. Accordingly, the trial court did not err in rendering summary judgment in favor of Ward. The sole assignment of error is overruled.

### IV. Conclusion

{¶ 23}   Hackney's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Thomas J. Diehl
Stephen V. Freeze
Todd Smith
Hon. Gregory F. Singer