[Cite as *Cracraft v. Dayton Power & Light Co.*, 2016-Ohio-3272.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MARK W. CRACRAFT, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | C.A. CASE NO. 26808 |
| | : | |
| v. | : | T.C. NO. 14CV1838 |
| | : | |
| THE DAYTON POWER & LIGHT | : | (Civil Appeal from |
| COMPANY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___3rd___ day of ___June___, 2016.

. . . . . . . . . . .

WILLIAM E. SANTEN, JR., Atty. Reg. No. 0019324 and BRIAN P. O'CONNOR, Atty. Reg. No. 0086646, 600 Vine Street, Suite 2700, Cincinnati, Ohio 45202
      Attorneys for Plaintiffs-Appellants

JAMES PAPAKIRK, Atty. Reg. No. 0063862 and GREGORY E. HULL, Atty. Reg. No. 0023520, 50 E Business Way, Suite 410, Cincinnati, Ohio 45241
      Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} The Montgomery County Court of Common Pleas entered summary judgment in favor of Dayton Power & Light Co. (DP&L) on Mark W. Cracraft's claim for personal injuries, and Cracraft appeals from this judgment. For the following reasons,

the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 2} In 2013, Cracraft worked as a supervisor and boilermaker for Ranger Steel, Inc., which, in turn, contracted with DP&L for work at DP&L's Killen Station power plant in southeastern Ohio.  Cracraft was assigned to the plant for several weeks.  Several other contractors were also working at the site.

{¶ 3} Each day on the site, Cracraft accessed the power plant by passing through a DP&L security checkpoint.  Cracraft, other contractors, and DP&L employees were also required by DP&L to attend a safety orientation meeting each morning.  As a supervisor, Cracraft performed inspections of various equipment and conditions each day; he recorded any potential risks that he observed on a safety task assessment sheet, and each Ranger Steel employee was required to initial the form acknowledging potential dangers and conditions, the safety equipment needed, and the like.   Cracraft performed these inspections and attended the safety meeting on April 19, 2013, the day of the incident in question.  On the safety task assessment sheet, Cracraft noted that there were "wet" conditions and that "slips/trips/fall" were a potential hazard.

{¶ 4} To perform the work that Ranger Steel had contracted to do, Cracraft was required to access forced draft fans located atop a building or structure; he accessed the fans by one of two metal ladders affixed to the side of the structure.   Cracraft had climbed the fixed ladder on the south side of the structure many times previously; due to work being done by other contractors, the ladder on the north side had previously been inaccessible.  On this day, however, both ladders were accessible.  Another man with whom Cracraft was working ascended the south ladder, and Cracraft ascended the north

ladder. The ladder on the north side was "under 20 feet" high; it started at the ground and led to a metal, grated platform. As Cracraft neared the top of the ladder, he slipped and fell to the ground, sustaining injuries to his leg and back.

{¶ 5} Several pipes or conduits ran behind and parallel to the north ladder. The pipes were approximately 7 inches behind the ladder, and there were clamps in place on the pipe at one point several feet below the top; the clamps were approximately 4-5 inches behind the ladder. The presence of these pipes was not noted on the safety task assessment sheet and had not otherwise caused any concern to DP&L before Cracraft's fall. After the accident, however, Cracraft theorized that the pipes, and particularly the location of the clamps, had prevented him from having sure footing on the ladder and had contributed to his fall.

{¶ 6} On March 28, 2014, Cracraft filed a complaint against DP&L for his injuries. Although he acknowledged that the owner of property[1] is generally not liable to independent contractors, such as Cracraft, for risks inherent in the work that they are hired to perform, Cracraft argued that, in several respects, this rule should not apply to his situation. On March 17, 2015, DP&L filed a motion for summary judgment. Cracraft opposed the motion. On August 18, 2015, the trial court entered summary judgment in favor of DP&L.

{¶ 7} Cracraft appeals, raising one assignment of error, which challenges the

---

[1] The rule as to liability for injuries to an independent contractor applies both to an owner or other employer who hires an independent contractor and to a contractor who hires a subcontractor. For purposes of this Opinion, we refer to DP&L as the "owner" of the power plant, and to Ranger Steel and its employee, Cracraft, as the "independent contractor" for DP&L. We recognize, however, that the power plant is a complex operation and that many other parties and layers of relationships were involved in the operations at the plant.

summary judgment in favor of DP&L.

## II.     Summary Judgment Standard

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party.   *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).   The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.   *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).   To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.   *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 9}   Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings.   *Dresher* at 293; Civ.R. 56(E).   Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial.   *Id.*   Throughout, the evidence must be construed in favor of the nonmoving party.   *Id.*

{¶ 10}   We review the trial court's ruling on a motion for summary judgment de novo.   *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial.   *Ward v. Bond,*

2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### III. Negligence

{¶ 11} In order to establish actionable negligence, a plaintiff must demonstrate the existence of a duty, a breach of the duty, and an injury proximately resulting from the breach. *Menifee v. Ohio Welding Prod., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984); *Gregory v. Towne Properties, Inc.*, 2d Dist. Montgomery No. 26410, 2015-Ohio-443, ¶ 23; *Turk v. NovaCare Rehab. of Ohio,* 8th Dist. Cuyahoga No. 94635, 2010-Ohio-6477, ¶ 16, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998).

*Duty*

{¶ 12} "Under the common law of negligence, '[w]here an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.' " *Szotak v. Moraine Country Club, Inc.*, 172 Ohio App.3d 34, 2007-Ohio-2974, 872 N.E.2d 1270, ¶ 13-16 (2d Dist.), quoting *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N.E.2d 629 (1953), paragraph one of the syllabus. In other words, owners of premises do not owe a duty of protection to independent contractors or the employees of independent contractors that they employ, even when the work being performed is inherently dangerous. *Lacey v. Sports Award, Inc.*, 2d Dist. Montgomery No. 21346, 2006-Ohio-4401, ¶ 23, citing *Routzahn v. Garrison,* 2d Dist. Montgomery No. 21190, 2006-Ohio-3652, ¶ 49. The independent contractor is presumed to know and appreciate that there is a danger surrounding the performance of

the work it has undertaken.  *Szotak* at ¶ 13, citing *Wellman* at paragraph two of the syllabus.

{¶ 13} An exception to this rule exists where the owner actively participates in the project assigned to the independent contractor or controls a critical variable in the work environment.  *Sopkovich v. Ohio Edison Co.,* 81 Ohio St.3d 628, 642-643, 693 N.E.2d 233 (1998); *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St.3d 206, 452 N.E.2d 326 (1983), syllabus; *Lacey* at ¶ 23.  For purposes of establishing liability to the injured employee of an independent contractor, active participation means that the owner "*directed the activity* which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project."  (Emphasis sic.)  *Sopkovich* at 641, citing *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 336-337, 650 N.E.2d 416 (1995), syllabus;  *Poneris v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 10AP-80, 2010-Ohio-5553, ¶ 8.  An owner or general contractor does not actively participate "merely by virtue of its supervisory capacity," or where it imposes general safety requirements directed to all workers.  *Cafferkey v. Turner Constr. Co.,* 21 Ohio St.3d 110, 113, 488 N.E.2d 189 (1986), syllabus.

{¶ 14} In its motion for summary judgment, DP&L asserted that there was no dispute as to Cracraft's status as an independent contractor, that he had inspected the ladder for safety concerns himself and found it to be safe, and that it (DP&L) had been unaware of any hazard associated with the ladder.   On these bases, DP&L asserted that it owed no duty to Cracraft.  DP&L also refuted Cracraft's claims that it had actively participated in Cracraft's work at the power station, citing the general supervisory nature

of its role.

{¶ 15} Cracraft contends that DP&L controlled the work activities of the independent contractors, and thus should be liable for injuries to its independent contractors' employees. As examples of this control, Cracraft points to the security checkpoint for getting into the power plant and the daily mandatory safety meeting. He also points to certain language in the purchase order and to DP&L's "General Terms and Conditions for Contracts for Services to Be Performed on Dayton Power & Light Property" ("terms and conditions"), which was referenced in the purchase order issued to Ranger Steel.

{¶ 16} The Supreme Court has specifically rejected Cracraft's position that general oversight of a workplace for security and safety constitutes sufficient control to demonstrate that the owner "actively participated" in the independent contractor's work. *Cafferkey* at 113. Moreover, Cracraft's argument ignores the complex, security-sensitive, and often dangerous nature of a power plant operation. To conclude that DP&L's efforts to limit access to the property for security reasons and to require safety meetings for the many contractors (and DP&L employees) working at Killen Station or any other power plant constituted "active participation" by DP&L in all of the independent contractors' activities, or that DP&L thereby directed and controlled the contractor's work activities, would substantially eliminate the distinction between an owner and an independent contractor, for liability purposes, and would be inconsistent with case law on this issue.

{¶ 17} Cracraft also contends that DP&L exercised control over a critical variable of his work: the ladder. However, except in very unusual circumstances, any agreement

between an owner and an independent contractor for work at the owner's premises must be interpreted to include access to the area where the work is to be performed. Here, the fans that Ranger Steel was hired to service were atop a large structure. There is no dispute that the parties assumed that Cracraft and other contractors would access the fans by the means provided by DP&L – the fixed ladders. The ladders were no more "critical" to the project than the platform on which the fans were located. *See McPherson v. Total Car Express, Inc.,* 2015-Ohio-5251, __ N.E.3d __ (5th Dist) (holding that the provision of an aluminum extension ladder did not constitute active participation in a project); *Hackney v. Ward,* 2d Dist. Montgomery Nos. 26175 and 26233, 2014-Ohio-4413 (provision and placement of ladder by homeowner was not active participation in the independent contractor's work, where the contractor could have brought his own ladder and/or changed its placement). The fact that the ladder was affixed to the structure at Killen Station does not change this analysis. Again, the interpretation advocated by Cracraft represents an expansion of the principle that an owner is not liable unless he exercises control over a "critical variable in the workplace."

**{¶ 18}** Cracraft further argues that the purchase order and the incorporated "terms and conditions" for the work undertaken by Ranger Steel at Killen Station demonstrate its "active participation" and "custody and control over the project." These provisions advised Ranger Steel to confirm its plans to work at the site with a DP&L contact person "prior to mobilizing" and to secure authorization for "procurement of goods and services" through the DP&L purchasing department. These documents also authorized DP&L to alter, add, or deduct work from the project, to inspect the work being performed under the contract, and to terminate the contract without cause pursuant to the terms of the contract.

Although Cracraft's references to the "terms and conditions" of the agreement do not incorporate the section on independent contractors (Article 38), this section states, in pertinent part: "At all times, Contractor shall be solely responsible for the means, methods, sequences, procedures, and safety precautions for the performance of the Work under this Contract."

{¶ 19} Active participation requires more than merely exercising a general supervisory role over the project; it must rise to the level of directing the activity which resulted in the injury or giving or denying permission for the critical act that led to the injury. *Bond v. Howard Corp.,* 72 Ohio St.3d 332, 336-337, 650 N.E.2d 416 (1995). General control over work activities or the worksite of independent contractors is insufficient to demonstrate active participation. *Id.* Having supervisors at a job site to ensure that a job is completed according to specifications also does not constitute active participation. *Michaels v. Ford Motor Co.*, 72 Ohio St.3d 475, 479, 650 N.E.2d 1352 (1995), citing *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N.E.2d 629 (1953).

{¶ 20} DP&L's coordination of the presence of independent contractors on the work site, its rules as to the procurement of goods and services through its purchasing department, its ability to modify the scope of the work and/or to terminate the contract or part thereof do not demonstrate active participation in a critical variable of Ranger Steel's work on the premises, and particularly not one that contributed to Cracraft's injury.

{¶ 21} There is no question that the use of the ladder to access the forced draft fans was part of the work undertaken by Ranger Steel, and Cracraft acknowledges in his brief that the use of a ladder is inherently dangerous. He had inspected the ladders himself each day of his work at the site, including the north ladder, and he submitted a

safety assessment to DP&L each day (including the day of the accident) acknowledging that he had inspected the condition of the ladders. The conduit behind the ladder was clearly visible through its rungs in all of the pictures presented by Cracraft. Whether the clamp was also clearly visible is less apparent. Cracraft does not assert that the clamp was directly behind a rung of the ladder (and thus obscured from view), and his face was undoubtedly inches from the clamp as he ascended the ladder. If the danger posed by the clamp were so obvious that DP&L should have known about and warned Cracraft of it, as he alleges, that danger should also have been apparent to him when he inspected and later climbed the ladder. There is no evidence of prior accidents or complaints which would have given DP&L superior knowledge of any hazard posed by the conduit or clamp.

{¶ 22} Cracraft was an independent contractor to whom DP&L did not owe any duty with respect to the risks inherent in the work he undertook at the site. Moreover, DP&L did not "actively participate" to such a sufficient degree that any reasonable jury could conclude that it was liable on that basis. Although DP&L had presumably installed and/or maintained the fixed ladders on the site, the interpretation urged by Cracraft -- that every aspect of the worksite that plays a role in the project or which the contractor utilizes to perform his or her task, whether the fixed ladders, the platforms, the rooms where the safety meetings were held, or the forced draft fans themselves, is a "critical" piece of the project and subjects to owner to liability – is an unsupported extension of the existing principle of owner liability.

{¶ 23} However, the principle that an independent contractor knows the risks inherent in the task(s) he or she undertakes (and cannot recover from the owner for injuries attendant to those risks) does not mean that an owner is insulated from injuries

caused by particular or heightened risks above those normally inherent in the activity. DP&L has suggested, for example, that even if the conduit and bracket had interfered with Cracraft's ability to climb the ladder, he could not recover from DP&L because climbing a ladder is inherently dangerous. We do not agree with this view.

{¶ 24} While climbing a ladder is inherently dangerous, an owner is not thereby insulated from any and all accidents related to all ladders. If the owner knows or should have known of a particular risk related to the use of a ladder that it provides on a worksite – a risk that would not be anticipated in the typical use of a ladder – there may be a factual issue as to whether the owner breached a duty of care. For example, if the owner provides a ladder that it knows to have a loose rung, or knows of a fixed ladder at a work site onto which oil drips, the owner may have a duty to warn the independent contractor of the risk if it were not open and obvious. Open and obvious hazards are those hazards that are neither hidden nor concealed from view and are discoverable by ordinary inspection. *Strayer v. Cox*, 2015-Ohio-2781, 38 N.E.3d 1162, ¶ 30 (2d Dist.), citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698 (5th Dist.1989).

{¶ 25} The problem with Cracraft's argument is that he has presented no evidence that DP&L knew or should have known that the conduit and its bracket created a risk to anyone climbing the ladder in question. He presented no evidence of prior injuries or complaints about the ladder and, by his own admission, a visual inspection of the ladder failed to reveal any concern about it. There is no evidence that DP&L knew or should have known of the particular risk. Indeed, Cracraft was unaware of the clamp until he and his expert inspected the site after the accident. Without knowledge of the risk, DP&L did not have a duty to warn Cracraft of it or to correct the allegedly hazardous condition,

and thus did not breach a duty to him. *Anderson v. Ruoff,* 100 Ohio App.3d 601, 604, 654 N.E.2d 449 (10th Dist.1995). Cracraft failed to create a genuine issue of material fact that DP&L owed him a duty of care with respect to the work he had undertaken.

*Proximate Causation*

{¶ 26} DP&L also argued in its motion for summary judgment that Cracraft had not created a genuine issue of material fact that the conduit and clamp placed behind the ladder had been the proximate cause of his fall. DP&L relied on the fact that Cracraft repeatedly stated in his deposition that his foot had slipped, and he had not testified or otherwise asserted that he recalled the placement of his foot on the ladder being problematic prior to his fall.

{¶ 27} Expert testimony and photographs showed that the conduit ran vertically behind the ladder, and that a clamp was present on the conduit between the third and fourth rungs from the top of the ladder. But Cracraft could not definitively state which rung or rungs he was standing on when he fell or which foot was on any particular rung. He testified at his deposition as follows:

Q: Okay, where were your feet?

A: If my hands were at this location, and my waist was at this location at the platform level, that would put my feet (indicating), right there at that elevation.

* * *

Q: All right. Okay. So you lost your footing probably around I think - - can you point to it, is it this rung right here?

A: It would be that rung right in there (indicating [and circling the fourth

rung from the top in Depo.Ex. C]).

Plaintiff's Attorney:  Let the record reflect in this photograph that that rung is 1, 2, 3, 4, 5, 6, 7, 8, 9 rungs from the bottom counting up with that first rung in the picture, so it's the 9th rung where his foot had slipped.

(Questioning resumed by Defense Counsel):  All right.  Sir, are you testifying from a recollection directly to that day that that's where all your hands and your feet were that day?

A:      To the best of my knowledge, yes, because of the eye contact that I had with [the contractor ascending the south ladder] in that proximity, it had, you know, that's where it happened.

Q:      Well, to some degree you are not sure but you're saying based on what you can recall it kind of adds up, is that correct?

A:      That's correct.

Q:      All right.  But you didn't count rungs while you were climbing this ladder, right?

A:      There's times that I do.   I don't know if I particularly did that day.

Q:      Well, can you tell me, did you count that you think you can recall?

A:      No, I can't recall that I counted that ladder rungs.

Q:      All right.  So you don't know if it was number 9 or number 10, what you know is that at some point up towards the top of this ladder is where you lost your footing, right?

A:      Yes.

Q:      All right.   And you did not, you weren't taking measurement of the

ladder or doing anything like that as you were climbing it, correct?

A;     No, sir.

Q:     All right.   And this is all kind of now that the lawsuit has evolved and you have been out there to inspect and you have talked to people, et cetera, now you're trying to piece together as best you can what happened, correct?

A:     That's correct.

Q:     All right. But you don't have any specific recollection as to which rung your legs were on, which – true?

[Objection noted.]

A:     I can only answer where my hands were because I was at the process of trying to get those located.   And if you use that in reference, that puts me right there at that location.

Cracraft Depo Tr. 133 – 136.

**{¶ 28}** This testimony does not create a genuine issue of material fact that either of Cracraft's feet were on the rung in front of the clamp or that he was standing on the left side of the rung (where the conduit was located) when he fell.   Cracraft's evidence may have created a genuine issue of material fact as to the step of the ladder on which he was standing when he fell, but it did not create a genuine issue of material fact as to the cause of the accident.   As to the step, Cracraft "estimated" that he was on the third or fourth step from the top based on the position of his upper body at that time; he knew he was "towards the top."    However, Cracraft did not testify that he recalled his foot hitting the conduit or its clamp as he climbed, or that he had any other difficulty placing his foot on

that rung. In fact, he stated that both of his feet and one hand were on the rungs when he fell, in accordance with the safety rule to maintain 3-point contact at all times. In sum, he did not recall any problem with the placement of his foot.

{¶ 29} At oral argument, Cracraft's attorney stated that a genuine issue of material fact as to proximate causation was established at pages 125-126 of Cracraft's deposition where, according to counsel, Cracraft stated that he could not properly place his foot on the rung, which caused him to fall. The pages cited at oral argument do not contain such testimony, nor do we find such testimony elsewhere in Cracraft's deposition. The deposition testimony indicates that Cracraft's foot "slipped downward," without reference to any problem placing the foot on the rung, generally, or to the conduit or clamp in particular.

{¶ 30} Cracraft's expert, Michael Wright, testified that the conduit and the clamp created a situation where, at a particular point, the foot clearance was not of the depth required by OSHA regulations. Although Wright testified that the conduit and bracket *could have caused* Cracaft to have improper placement of his foot on the fourth rung, he did not witness the accident and could not state as fact that Cracraft fell from the fourth rung or that his foot was, in fact, impeded by the clamp. Wright also acknowledged that there could be "separate contributing causes" for the fall and that the "record is silent" as to whether DP&L had any knowledge that the clamp could create a hazard.

{¶ 31} Because Cracraft failed to demonstrate a genuine issue of material fact that DP&L had a duty to warn him or protect him from the alleged danger created by the clamp and that the clamp was the proximate cause of his fall, the trial court did not err in granting summary judgment on his negligence claim.

### IV.   Assumption of Risk and the Consortium Claims

**{¶ 32}** Having found that Cracraft did not demonstrate a genuine issue of material fact as to DP&L's duty to him or the conduit and clamp being the proximate cause of his fall, we need not address his arguments with respect to whether he had assumed the risk of climbing the ladder (as the trial court found) or his assertion that the loss of consortium claim was improperly dismissed.

**{¶ 33}** The assignment of error is overruled.

### V.   Conclusion

**{¶ 34}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

William E. Santen, Jr.
Brian P. O'Connor
James Papakirk
Gregory E. Hull
Hon. Barbara P. Gorman