[Cite as *Pugh v. Fender*, 2021-Ohio-1777.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| WALLACE PUGH, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2020-A-0040** |
| WARDEN OF LAECI, FENDER, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2018 CV 00595.

Judgment: Reversed and remanded.


*Wallace Pugh*, pro se, PID: A358-188, Lake Erie Correctional Institution, 501 Thompson Road, P.O. Box 8000, Conneaut, OH 44030 (Plaintiff-Appellant).

*Timothy J. Bojanowski*, Struck Love Bojanowski & Acedo, PLC, 3100 West Ray Road, Suite 300, Chandler, AZ 85226 (For Defendants-Appellees).


MARY JANE TRAPP, P.J.

{¶1} Appellant, Wallace Pugh ("Mr. Pugh"), appeals the judgment of the Ashtabula County Court of Common Pleas granting the motion for summary judgment of appellees, Warden Fender[1], Assistant Unit Manger Noholtz, Sgt. Bennett, J. Barker, and Sgt. Mozza (collectively, "the defendants").

---

1. Warden Fender is the successor to Warden Sloan, who was named in the initial pleadings.

{¶2} In his sole assignment of error, Mr. Pugh contends that the trial court erred by granting summary judgment to the defendants.

{¶3} After a careful review of the record and pertinent law, we find that the defendants did not meet their burden under Civ.R. 56 to demonstrate the absence of a genuine issue of material fact regarding Mr. Pugh's claim. Therefore, the burden did not shift to Mr. Pugh, and summary judgment should have been denied.

{¶4} Thus, we reverse the judgment of the Ashtabula County Court of Common Pleas and remand for further proceedings consistent with this opinion.

## Substantive History and Procedural Background

{¶5} Mr. Pugh is an inmate incarcerated at the Lake Erie Correctional Institution ("LECI") in Conneaut, Ohio. The defendants were LECI staff members during the relevant time period.

### *Mr. Pugh's Claims*

{¶6} Mr. Pugh contends that on July 20, 2018, he was given a direct order to report to the "administrative red line," where a LECI staff member questioned him about, among other things, items on his JP5 media player. Thereafter, he was handcuffed and placed in the segregation unit for investigation. Mr. Pugh asked if he could return to his dorm to pack up his belongings, but the staff member told him that the correction officers would do so and secure them according to LECI policy.

{¶7} Upon his release from segregation, LECI staff did not return all of Mr. Pugh's personal items, including $80 worth of commissary items; a $12 blanket; two chargers valued at $70; two handheld games valued at $100; a bag containing hygiene products valued at approximately $20; a JP5 media player valued at $120; and, most importantly

2

to him, two copies of a 461-page book entitled "Reset" that he wrote over a ten-year period and all research materials pertaining to his book.

{¶8} According to Mr. Pugh, he made numerous attempts to retrieve his personal items by talking to LECI staff and administrative officials, with his main concern being the retrieval of his book. He also filed a grievance and completed the appeal process to no avail. He contends that he was continually given "the run-around" and redirected to different departments or staff members.

{¶9} The defendants acknowledge that they confiscated and destroyed Mr. Pugh's property but contend that they did so properly because it constituted contraband in violation of LECI rules.

{¶10} According to Jeffrey Fisher ("Mr. Fisher"), who was the executive assistant at LECI at the time of the alleged events, Sergeant J. Barker ("Sgt. Barker") wrote a conduct report on July 23, 2018, regarding contraband materials he found in Mr. Pugh's cell. Inmates at LECI are issued a box to store their legal materials, and only legal materials are permitted to be stored in this box. Sgt. Barker indicated that he was searching Mr. Pugh's "legal box" and found pornographic materials and writings not related to any legal matter. If an inmate stores any items other than legal materials, then the entire box is deemed contraband under Ohio Department of Rehabilitation and Correction ("ODRC") policy.

{¶11} Mr. Pugh was charged with a violation of a specific rule prohibiting inmates from possessing contraband. The Rules Infraction Board heard his disciplinary case. Based on the information presented, the board found Mr. Pugh guilty of violating the rule. The board sanctioned Mr. Pugh with seven days' bunk restriction and confiscation of the

3

contraband items. The warden reviewed the board's proceedings and disposition and affirmed its action. Mr. Pugh filed an informal complaint on July 30, 2018, in which he admitted to possessing pornography.

### Mr. Pugh's Pleadings

{¶12} In September 2018, Mr. Pugh, pro se, filed a document entitled "Motion for Waiver of Deposit, Filing Fee of Said Civil Complaint Pursuant to Local Rule 2(C)(2)" in the Ashtabula County Court of Common Pleas. In the case caption, Mr. Pugh listed the names of the defendants and some of their titles, including the warden, a unit manager, an assistant unit manager, and two sergeants.[2] In the body, Mr. Pugh stated that he was currently incarcerated and had been for over 20 years. He requested that the trial court find him indigent and that all parties be notified of the complaint for "possible negotiations." He also referred to a jury demand.

{¶13} Two days later, Mr. Pugh filed a second document entitled "Motion to Ammend [sic] Original Complaint."

{¶14} In the first paragraph, Mr. Pugh sought to add another individual as an additional defendant, whom he identified as "Unit Manager Harsin." He also alleged "reckless unprofessional misconduct," "intent for theft with blaintant [sic] deception," and "disregard of laws," and listed a prayer amount of $250,000 per defendant, for a total of $1,250,000.

{¶15} In a portion entitled "Memorandum of [sic] Support," Mr. Pugh alleged, in pertinent part, that the "defendants neglected, to this current time, to come forth with plaintiff's property, and slandered, and furthermore, stole his personnal [sic] property, and

---

2. Pugh identified the assistant unit manager's surname as "Noholtz." The defendants assert that the correct surname is "Hinojos."

4

placed his own person in isolation, and the failure to give back his private documents) [sic] and property of vital value, that places his extreme hard work for a minimal time-frame of 20+ years at risk of destruction, and possible exploitation, places his work he's put forth to an amount that's unspeakable."

{¶16} In a portion entitled "Relief Sought," Mr. Pugh listed "punitive damages" of $1,250,000 and "monitary [sic] damages" of $1,250,000.

{¶17} The clerk of courts issued service of the summons on the next day. It does not appear that the clerk issued service on Mr. Harsin.

{¶18} In October 2018, Mr. Pugh filed a third document, although the certificate of service indicates that he served it on the clerk of courts rather than the defendants. In this document, Mr. Pugh requested the return of "deprived property" and "private documents" consisting of a 461-page book and its related research material, 76 articles for publication, a J-5 player, and legal filings and correspondence.

### The Defendants' Motion to Dismiss

{¶19} The defendants jointly appeared through counsel and filed a motion to dismiss Mr. Pugh's complaint for failure to state a claim pursuant to Civ.R. 8 and 12, arguing that Mr. Pugh's first and second documents contained insufficient facts to allow them to formulate an answer.

{¶20} Mr. Pugh filed a response to the defendants' motion to dismiss setting forth more specific factual allegations.

{¶21} The trial court issued a judgment entry granting the defendants' motion and dismissing Mr. Pugh's complaint. In its judgment entry, the court determined as follows:

5

{¶22} "When reviewing [Mr. Pugh's] complaint, along with Defendants' Motion to Dismiss pursuant to Ohio Civ.R. 8 and Ohio Civ.R. 12, it is apparent that [Mr. Pugh] has not followed proper pleading requirements. After review, [Mr. Pugh's] original complaint and amended complaint, are both deficient in that both fail to set forth a short plain statement of the claim showing that the party is entitled to relief, and a demand for judgment for the relief to which the party claims to be entitled. Neither complaint is in compliance with the requirements of Ohio Civ.R. 8. [Mr. Pugh's] complaint and amended complaint have insufficient facts to allow Defendants a basis to formulate an answer.

{¶23} "[Mr. Pugh's] Complaint cannot survive an Ohio Civ.R. 12(B)(6) challenge. [Mr. Pugh] has failed to state a claim upon which relief may be granted and can prove no set of facts entitling him to the relief sought."

{¶24} Mr. Pugh appealed to this court, where we reversed the trial court's judgment and remanded for further proceedings. *See Pugh v. Sloan*, 11th Dist. Ashtabula No. 2019-A-0031, 2019-Ohio-3615, ¶ 2 (hereinafter, "*Pugh I*"). We determined that while Mr. Pugh's amended complaint may have been "inartfully drafted," it complied with the liberal pleading requirements of Civ.R. 8(A). *Id*. at ¶ 50. In addition, it was not clear that Mr. Pugh could prove no set of facts entitling him to relief pursuant to Civ.R. 12(B)(6). *Id*. at ¶ 31, ¶ 52. A liberal construction of Mr. Pugh's amended complaint indicated that he sought monetary damages against prison officials for allegedly taking his personal property without legal justification. *Id*. at ¶ 30, ¶ 51. The case law indicates that prison inmates regularly file such claims. *Id*. at ¶ 52.

6

### Post-Remand Proceedings

{¶25} Upon remand, the trial court filed a judgment entry ordering the defendants to file a formal answer to Mr. Pugh's complaint.

{¶26} The defendants, through counsel, filed a joint answer denying Mr. Pugh's allegations and asserting several affirmative defenses.

{¶27} The trial court also filed a judgment entry referring the matter to mediation.

{¶28} On January 6, 2020, the trial court filed a scheduling order, which included discovery and dispositive motion deadlines of February 20.

{¶29} Mr. Pugh issued discovery requests to the defendants, consisting of 14 interrogatories, five requests for admission, and 13 requests for production of documents. Mr. Pugh's certificate of service indicates that he sent the discovery requests to the defendants' counsel on January 30. The defendants' counsel, whose office is located in Arizona, apparently did not receive Mr. Pugh's discovery requests until February 13.

{¶30} On February 21, the defendants filed a motion for summary judgment. In support of their motion, the defendants referenced Mr. Pugh's original and amended complaints and no other evidentiary materials.

{¶31} The defendants argued that Mr. Pugh's amended complaint was "devoid of detail as to time, date, place, action/inaction or descriptions of the alleged property loss at issue." As such, the defendants and the trial court were "left to guess as to what property was taken; when or where the alleged property loss occurred; whether the loss occurred before after [Mr. Pugh] was placed in 'isolation,' and what *each* individual Defendant did or did not do that caused or contributed to the unidentified property loss."

(Emphasis sic.) According to the defendants, "[n]either the original [n]or Amended Complaint specify a cause of action or theory of liability."

{¶32} The defendants also set forth the required elements for claims of negligence, conversion, bailment, and punitive damages and argued that they were entitled to summary judgment on each of these claims because Mr. Pugh's pleadings were insufficient to establish several of the required elements.

{¶33} The scheduled mediation was held before a mediator. Mr. Pugh appeared by telephone, and defendants' counsel and Warden Douglas Fender (in place of Warden Sloan) appeared. The mediator's report states, "Mediation suspended and may be rescheduled after ruling on Motion for Summary Judgment at the direction of the Court."

{¶34} The trial court filed a notice scheduling a nonoral summary judgment hearing for March 26.

{¶35} On March 16, the defendants served their purported responses to Mr. Pugh's discovery requests. The defendants did not provide substantive responses or produce responsive documents but instead asserted the following objection to each of Mr. Pugh's requests: "Objection, Plaintiff's discovery request violates Ashtabula Co. L.R. 6(B)(2)(d) and the Court's Scheduling Order dated January 6, 2020; Case No. 2018 CV 00595." The next day, the defendants filed a notice of service indicating that they had served Mr. Pugh with their discovery responses.

{¶36} Mr. Pugh filed a motion to continue the nonoral hearing date, contending that he was not served with a copy of the defendants' motion for summary judgment. The magistrate filed an order noting that the defendants' motion contained a proper certificate

8

of service but granted Mr. Pugh leave until April 21 to file a response and reset the nonoral hearing date for May 4.

{¶37} Mr. Pugh subsequently filed an additional motion to continue the nonoral hearing date, stating that he had recently received the defendants' motion for summary judgment and would like to respond; the defendants had failed to properly respond to his discovery requests and that he needed the assistance of the court to obtain proper answers; and he needed time to submit his pretrial statement. Mr. Pugh further noted that the prison had closed the law library due to COVID-19, which restricted his access to legal materials and assistance.

{¶38} The magistrate filed an order granting Mr. Pugh's motion "[d]ue to the Corona-virus global health pandemic emergency, and for good cause shown." The magistrate granted Mr. Pugh leave until August 14 to file a response and reset the nonoral hearing date for August 28.[3]

{¶39} The magistrate filed an order memorializing a June status conference. Mr. Pugh did not appear by telephone or otherwise. Defendant's counsel appeared by telephone and indicated that the status of the case remained the same.

{¶40} Mr. Pugh filed a response to the defendants' motion for summary judgment. Mr. Pugh argued that he set forth sufficient operative facts to establish substantive grounds for relief. In support, Mr. Pugh attached an affidavit from himself containing the allegations set forth above, as well as copies of an "inmate property theft/loss report"

---

3. Mr. Pugh's motion may have implicated Civ.R. 56(F), which states that "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." Since Mr. Pugh has not raised any issues on appeal relating to this motion, we do not address it.

dated July 29, 2018, and a letter from Ohio Attorney General's Office dated August 31, 2018, recommending that he contact ODRC regarding his "concerns regarding theft at an institution."

{¶41} Mr. Pugh also filed a motion to compel the defendants to answer his discovery requests. The defendants opposed Mr. Pugh's motion, and Mr. Pugh filed a reply.

{¶42} Mr. Pugh subsequently filed a motion requesting that the trial court deem his requests for admission as admitted by the defendants based on their failure to respond.

{¶43} The trial court did not address Mr. Pugh's discovery motions.

{¶44} The defendants filed a reply in support of their motion for summary judgment. The defendants attached an affidavit from Mr. Fisher containing the factual allegations set forth above. Mr. Fisher's affidavit also incorporated and attached copies of a conduct report from Sgt. Barker dated July 23, 2018; documentation from the Rules Infraction Board; and portions of an informal complaint filed by Mr. Pugh. The defendants argued that based on the evidence, Mr. Pugh cannot establish the required elements for claims of bailment, negligence, or conversion.

### *The Trial Court's Judgment*

{¶45} The trial court subsequently filed a judgment entry granting the defendants' motion for summary judgment and dismissing Mr. Pugh's claims with prejudice.

{¶46} In its judgment entry, the trial court stated that it "reviewed and considered" the parties' briefs with affidavits; the documents it previously construed as Mr. Pugh's

original complaint and amended complaint; and the third document Mr. Pugh filed on October 5, 2018.

{¶47} The trial court construed Mr. Pugh's amended complaint as follows:

{¶48} "[Mr. Pugh]'s amended complaint states that when he was released from segregation, his box of possessions had been illegally filled with state property. It is unclear if [Mr. Pugh]'s property in question was in the box, who had put any property in the box, who was responsible for the property, and whether it was a bailment. Looking at the pleading in a light most favorable to [Mr. Pugh], the Court concludes some of [his] personal property, including personal documents came up missing after he was released from segregation or isolation as termed by [Mr. Pugh]."[4]

{¶49} According to the trial court, Mr. Pugh's amended complaint is premised upon a claim of negligence. After setting forth the required elements, the trial court determined that Mr. Pugh "cannot prove facts sufficient to establish that any of the Defendants wrongfully took possession of some specified property" or that they "had a duty to return property to [him]." In addition, Mr. Pugh "cannot establish" that the defendants "possessed his personal property in the form of a either a bailment for which Defendants did not return the property" or "with an intention to convert the property or steal the property." Further, Mr. Pugh did not "state or allege that he had the right to possess the property" or "that the property was **not** contraband," and he did not make any "factual allegations" that the defendants "breached a duty owed to [him] or that such breach proximately caused any loss to [him]." (Emphasis sic.)

---

4. It appears that the trial court may have been referencing Mr. Pugh's response to the defendants' motion to dismiss filed on October 29, 2018, as Mr. Pugh's amended complaint does contain these allegations.

11

{¶50} The trial court stated that, alternatively, Mr. Pugh's amended complaint asserts a theory of conversion. After setting forth the required elements, the trial court determined that Mr. Pugh "cannot prove facts sufficient to establish that any of the individual defendants took possession or disposed of property that [Mr. Pugh] possessed in the prison."

{¶51} The trial court further determined that although Mr. Pugh stated as part of his claims that he was placed in "isolation," there was "nothing more" provided to the Court "in the pleadings and filings" as to "how this was somehow illegal or even a violation of his rights." Mr. Pugh "has not presented any facts as to how he was injured by being placed in 'isolation.'"

{¶52} Finally, the trial court stated that Mr. Pugh's amended complaint alleges that he was slandered, based on his reference to "slanderous remarks" in his October 5, 2018 filing. The trial court determined that Mr. Pugh did not "specify" in this filing "which of the defendants made slanderous remarks, what was said that constituted slanderous remarks, when and by whom, or how he was harmed." Thus, the trial court determined that Mr. Pugh "has not established or alleged any evidence that the Defendants made slanderous remarks, and how he was harmed by the slanderous remark."

{¶53} The trial court concluded as follows:

{¶54} "Accordingly, after presuming all factual allegations to be true, and all reasonable inferences made in favor of the nonmoving parties, the Court concludes that [Mr. Pugh] can prove no set of facts in support of his claims which would entitle him to the relief sought. Therefore, the Court concludes there are no issues of material fact in this case and that the Defendants are entitled to summary judgment."

{¶55} Mr. Pugh appealed and presents the following assignment of error:

{¶56} "The trial court abused its discretion when it granted defendants motion for summary judgment and dismissed Pugh's complaint herein."

## Standard of Review

{¶57} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9. "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Sabo* at ¶ 9.

## Summary Judgment Standards

{¶58} We begin by setting forth the legal standards governing summary judgment proceedings.

{¶59} Civ.R. 56 states, in pertinent part, as follows:

{¶60} "(B) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

13

{¶61} "(C) Motion and Proceedings. * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *

{¶62} "* * *

{¶63} "(E) Form of Affidavits; Further Testimony; Defense Required. * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶64} As this court has explained, "[s]ince summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

14

{¶65} "In *Dresher v. Burt* [75 Ohio St.3d 280, 662 N.E.2d 264 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*

{¶66} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* [38 Ohio St.3d 112, 526 N.E.2d 789 (1988)]." *Id.*

**Analysis**

{¶67} Based on our de novo review, we find that the defendants did not meet their burden on summary judgment to identify those portions of the record which demonstrate the absence of a genuine issue of material fact regarding Mr. Pugh's claims.

{¶68} The defendants referred solely to Mr. Pugh's pleadings in support of their motion for summary judgment, which Civ.R. 56(C) permits. The *Dresher* court explained

15

that "there is no requirement in Civ.R. 56 that the moving party support its motion for summary judgment with any *affirmative evidence, i.e.*, affidavits or similar materials *produced by the movant.*" *Dresher* at 292. (Emphasis sic.) "[S]ummary judgment may be rendered where *the pleadings* and the arguments of the party seeking summary judgment clearly establish that the nonmoving party has no legally cognizable cause of action." (Emphasis sic.) *Id.* at 297-298.

{¶69} As an example, the *Dresher* court cited the Ninth District Court of Appeals' decision in *Miller v. Summit Cty. Bd. of Edn.*, 9th Dist. Summit No. 16493, 1994 WL 511043 (Sept. 21, 1994). *Dresher* at 296. The *Dresher* court explained that "in *Miller*, the defendants were entitled to summary judgment merely by pointing out to the trial judge the applicable provisions of the Ohio Administrative Code which, when read in conjunction with Miller's complaint, defeated Miller's claims. In other words, by pointing out the requirements of Ohio Adm.Code 3301-83-07, and those portions of the plaintiff's pleadings that showed plaintiff was entitled to no relief, the defendants succeeded in demonstrating, by evidence permitted under Civ.R. 56(C) (the pleadings), that defendants were entitled to judgment as a matter of law." *Id.* at 298.

{¶70} In this case, unlike in *Miller*, Mr. Pugh's pleadings did not "clearly establish" that he "has no legally cognizable cause of action." *Dresher* at 297-298. In *Miller*, the defendants were entitled to summary judgment because the specific allegations in the plaintiff's complaint, in light of applicable provisions of the Ohio Administrative Code, precluded the plaintiff's claim. *See Dresher* at 298. Here, the defendants argued that Mr. Pugh's pleadings did not contain sufficient detail to prove the required elements for claims

16

of negligence, conversion, and bailment, and punitive damages. In essence, the defendants challenged the sufficiency of Mr. Pugh's pleadings to state a claim for relief.

{¶71} As the *Dresher* court recognized, "[w]here there are no evidentiary materials other than the pleadings, and the pleadings themselves demonstrate that the claimant has no cause of action, a motion may be made for judgment on the pleadings" pursuant to Civ.R. 12(C). *Id.* at 298, fn. 9. The court has referred to a Civ.R. 12(C) motion for judgment on the pleadings as a "belated" Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *State ex rel. Holloman v. Phillips*, 100 Ohio St.3d 70, 2003-Ohio-5063, 796 N.E.2d 524, ¶ 8, fn. 3.

{¶72} However, a motion to dismiss and a motion for summary judgment involve different legal issues. *Creaturo v. Duko*, 7th Dist. Columbiana No. 04 CO 1, 2005-Ohio-1342, ¶ 26. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). A trial court may only dismiss for failure to state a claim upon which relief can be granted if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Further, "a plaintiff is not required to prove his or her case at the pleading stage." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

{¶73} As indicated, the defendants previously filed a motion to dismiss pursuant to Civ.R. 8 and Civ.R. 12, which the trial court granted. In *Pugh I*, we reversed the trial

17

court's judgment and expressly determined that "Mr. Pugh's claim was sufficiently pled under Civ.R. 8(A) to survive a Civ.R. 12(B)(6) motion to dismiss." *Id.* at ¶ 2.

{¶74} By contrast, a motion for summary judgment under Civ.R. 56 does not test the legal sufficiency of *the pleadings* but instead tests the sufficiency of *the evidence* supporting those pleadings. *Pond v. Carey Corp.*, 34 Ohio App.3d 109, 111, 517 N.E.2d 928 (10th Dist.1986); *Creaturo* at ¶ 27; *see* 2 Klein & Darling, Baldwin's Ohio Practice Civil Practice, Section 56:1 ("[A] distinguishing feature of the summary judgment motion is that it does not test the sufficiency of the pleadings, but instead is a factual inquiry * * * on the claims asserted in the complaint"). Further, the purpose of summary judgment is not to try issues of fact but to determine whether triable issues of fact exist. *McCruter v. Travelers Home & Marine Ins. Co.*, 2021-Ohio-472, --- N.E.3d ---, ¶ 46 (11th Dist.); *McGee v. Goodyear Atomic Corp.*, 103 Ohio App.3d 236, 242-243, 659 N.E.2d 317 (4th Dist.1995). Thus, deficiencies in a plaintiff's complaint do not entitle a moving party to summary judgment. *Transcontinental Ins. Co. v. Exxcel Project Mgt., Inc.*, 10th Dist. Franklin No. 04AP-1243, 2005-Ohio-5081, ¶ 10.

{¶75} By challenging the sufficiency of Mr. Pugh's pleadings in their motion for summary judgment, the defendants applied the incorrect legal standard. Thus, they necessarily did not meet their burden under Civ.R. 56 to demonstrate the absence of a genuine issue of material fact.

{¶76} We note that the defendants subsequently filed a reply brief, where, for the first time, they addressed the substantive merits of Mr. Pugh's claims and attached evidentiary material.

18

{¶77} Courts have held that "the moving party must meet its initial *Dresher* burden in the initial motion, and not the reply brief." *Palmer v. Bowers*, 9th Dist. Lorain No. 17CA011137, 2019-Ohio-1274, ¶ 27. "To allow otherwise would circumvent the substance of Civ.R. 56 and the *Dresher* burden shifting." *Id.*; *Ramsey v. Dash Tree Servs., Inc.*, 11th Dist. Lake No. 2019-L-081, 2020-Ohio-2668, ¶ 24 (applying *Palmer*).

{¶78} As this court has stated, "'[i]t is well-established that a party moving for summary judgment must expressly delineate each basis on which it seeks summary judgment in its motion so as to provide the opposing party a meaningful opportunity to respond. The danger in allowing a new argument to be asserted in a reply or a supplemental motion is that the opposing party does not have an opportunity to respond and may be subjected to summary judgment by ambush.'" *Hicks v. Cadle Co.*, 2016-Ohio-4728, 66 N.E.3d 1255, ¶ 18 (11th Dist.), quoting *Baker v. Coast to Coast Manpower, LLC*, 3d Dist. Hancock No. 5-11-36, 2012-Ohio-2840, ¶ 35.

{¶79} Accordingly, the defendants' arguments and evidence in their reply brief did not satisfy their initial burden under *Dresher.*

{¶80} Our review of the trial court's judgment entry indicates that it also applied the incorrect legal standard. Although the trial court stated that it had reviewed and considered the parties' summary judgment materials, its analysis focused on the sufficiency of the allegations in Mr. Pugh's pleadings in relation to the required elements for negligence, conversion, and slander claims. Our conclusion is confirmed by the trial court's express statement that Mr. Pugh "can prove no set of facts in support of his claims which would entitle him to the relief sought." As indicated, this is the applicable legal standard for a motion filed under Civ.R. 12(B)(6) or Civ.R. 12(C), not a motion for

summary judgment filed under Civ.R. 56. Therefore, the trial court necessarily failed to recognize that the defendants did not meet their burden under Civ.R. 56 to demonstrate the absence of a genuine issue of material fact.

{¶81} When, as here, the moving party fails to discharge its initial burden, the burden does not shift to the nonmoving party under Civ.R. 56(E), and summary judgment must be denied. *Ramsey* at ¶ 24; *Dresher* at 293. Accordingly, the trial court's judgment is reversed, and this matter is remanded for further proceedings.

{¶82} "'Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.'" *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293, ¶ 11, quoting *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982).

{¶83} The error in this case occurred when the trial court granted summary judgment to the defendants. That judgment has been reversed; thus, on remand, the trial court shall proceed to consideration of Mr. Pugh's previously filed motion to compel and motion to deem matters admitted.

{¶84} Mr. Pugh's sole assignment of error has merit.

{¶85} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

20